Dominic NIRO, Plaintiff-Appellee,

v.

FEARN INTERNATIONAL, INC.,
Defendant-Appellant,

and

Beer, Soft Drink, Water, etc., Local Union 744, I.B.T., Defendant-Appellee.

No. 86–2769.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 26, 1987.

Decided Aug. 19, 1987.

Rehearing and Rehearing En Banc
Denied Oct. 26, 1987.

Terrill E. Pierce, Kovar Nelson & Brittain, Chicago, Ill., for defendant-appellant.

Barry M. Bennett, Asher Pavalon Gittler & Greenfield, Chicago, Ill., for plaintiff-appellee.

Before CUDAHY, RIPPLE and MANION, Circuit Judges.

CUDAHY, Circuit Judge.

This case involves a mutation of a "hybrid" section 301 suit brought by an employee against his union and former employer. *See* 29 U.S.C. § 185. The variation in this case arises because the union switched sides after a section 301 suit was brought. The union reached an agreement with the former employee to begin pursuing arbitration against the employer rather than defending itself against the employee's charge of a violation of the duty of fair representation. The district court ordered the union and the employer to arbitrate and it dismissed the employee's section 301 suit without prejudice. We affirm.

## I.

Dominic Niro worked for Fearn International, Inc. ("Fearn") and was represented in collective bargaining by Local 744 of Beer, Soft Drink, Water, Fruit Juice, Carbonic Gas, Liquor Sales, Drivers, Helpers, Inside Workers, Bottlers, Warehousemen, School, Sightseeing, Charter Bus Drivers, General Promotional Employees of Affiliated Industries, International Brotherhood of Teamsters (the "Union" or "Local 744"). Fearn fired Niro in April 1984 for reporting to work while under the influence of alcohol or drugs. Niro looked to Local 744 for help, and on May 1, 1984, Local 744 filed a grievance protesting Niro's discharge. After negotiations the parties agreed on a settlement pursuant to which Niro was reinstated with Fearn contingent upon his successful completion of an alcohol abuse program. Before completing this program, however, Niro was hospitalized for overdosing on a controlled substance, "PCP." When Fearn officials learned of Niro's use of PCP, they concluded that Niro had breached the settlement agreement and decided to terminate his employment. Fearn apparently reached this decision in mid-May and communicated it to the Local 744 shop steward shortly thereafter. Niro himself was informed of this decision on May 31. Actual termination did not occur until July 20 after Niro completed the substance abuse program. The Union never filed a grievance challenging Fearn's second discharge of Niro.

On December 11, 1984, Niro sued Fearn for wrongful discharge in violation of the collective bargaining agreement. *See* 29 U.S.C. § 185. In response to Fearn's motion to dismiss, in February 1985 Niro filed an amended complaint adding the Union as a defendant, alleging that the Union had breached its duty of fair representation by failing to challenge his second discharge. In July 1985, Niro and Local 744 sought court approval of a proposed settlement under which Niro would voluntarily dismiss (with prejudice) Local 744 as a defendant in exchange for Local 744's pledge to pursue arbitration to challenge Niro's second discharge. Fearn opposed the settlement and the district court agreed, finding that "fairness and efficiency" required that the settlement be rejected. *See* Fed.R.Civ.P. 21, 41(a)(2). Thereafter Local 744 brought a cross-claim against Fearn to compel arbitration over the alleged breach of the settlement agreement and over the original discharge. The district court granted the cross-claim in part and denied it in part, ordering arbitration over the alleged breach of the settlement agreement (the second discharge), but concluding that the original discharge was no longer arbitrable.

Fearn appeals the order compelling arbitration of the second discharge, urging that three legal errors require that we reverse the judgment of the district court: (1) the alleged breach of the settlement agreement is not an arbitrable subject; (2) the cross-claim seeking arbitration is not timely; and (3) the court cannot compel arbitration after a hybrid section 301 suit has commenced. As discussed below we disagree and instead affirm the judgment of the district court.

## II.

A. *Arbitrability of Breach of Settlement Agreement*

Fearn's original discharge of Niro was unquestionably an action subject to the grievance and arbitration procedures set

forth in the collective bargaining agreement between Fearn and Local 744.[1] Fearn argues, however, that the settlement agreement that resolved the dispute about Niro's original discharge is not itself subject to the collective bargaining agreement and is thus not arbitrable.

We begin with the axiom that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960) (part of *"Steelworkers Trilogy "* at 363 U.S. 564, 80 S.Ct. 1343 and 363 U.S. 593, 80 S.Ct. 1358); *AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986). But arbitration is favored and should be ordered "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Warrior & Gulf Navigation Co.*, 363 U.S. at 582–83, 80 S.Ct. at 1352–53. It is of course for the court to determine whether a dispute is subject to arbitration, unless the parties have "clearly and unmistakably" established that an arbitrator is to determine issues of arbitrability. *AT & T Technologies, Inc.*, 106 S.Ct. at 1418; *see John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 546–47, 84 S.Ct. 909, 912–13, 11 L.Ed.2d 898 (1964).

■ We conclude that a settlement agreement is an arbitrable subject when the underlying dispute is arbitrable, except in circumstances where the parties expressly exclude the settlement agreement from being arbitrated. To hold otherwise could eviscerate the usefulness of settlements reached in grievance and arbitration settings, by complicating what should be a relatively simple and cheap procedure. If parties desire that a settlement agreement should not be arbitrable they may so pre-scribe. We simply agree with Local 744 that in uncertain situations the presumption should favor arbitrability. *Accord Bakers Union Factory No. 326 v. ITT Continental Baking Co.*, 749 F.2d 350, 356 (6th Cir.1984); *L.O. Koven & Bro., Inc. v. Local 5767, United Steelworkers*, 381 F.2d 196, 204–05 (3d Cir.1967); *International Union of Operating Eng'rs, Local 564 v. Dow Chem. Co.*, 348 F.Supp. 1149, 1153 (S.D.Tex.1972); Elkouri & Elkouri, *How Arbitration Works*, 206 n. 257 (4th ed. 1985); *cf. also Westinghouse Broadcasting Co. v. Local 804, Int'l Alliance of Theatrical Stage Employees*, 616 F.2d 97, 100 (3d Cir.1980) (alleged breach of pension agreement arbitrable); *Teamsters Local 284 v. Maremont Corp.*, 515 F.Supp. 168, 174 (S.D. Ohio 1980) (alleged breach of arbitration decision arbitrable); *Kansas City Power & Light Co. v. Local 1464, IBEW*, 506 F.Supp. 1151, 1155–56 (W.D.Mo.1981) (alleged breach of agreement supplementing labor contract arbitrable).

Fearn also contends that, even if the alleged breach of the settlement agreement were arbitrable, the district court here erred by failing to recognize that Niro's and Local 744's utter failure to pursue preliminary grievance procedures necessitated a conclusion that no arbitration could be ordered. Fearn essentially argues that if procedural shortcomings are severe enough, they become substantive failings and render the underlying dispute nonarbitrable. The question whether a particular dispute concerns a subject that the parties have agreed to arbitrate is ordinarily a question to be decided by the court. Questions whether a party adequately has abided by procedural requirements of an arbitration agreement, on the other hand, normally are reserved for the arbitrator's judgment. The high hurdle that Fearn fails to clear was first raised by the Supreme Court in *John Wiley & Sons v. Livingston*, 376 U.S. 543, 84 S.Ct. 909, 11

---

**1.** The collective bargaining agreement specified terms and conditions of employment and established, in broad terms, that the specified grievance procedures applied to:

any dispute or difference of opinion between the Company and the Union or between the Company and any of its employees covered by this [collective bargaining] Agreement, involving the meaning, interpretation or application of the provisions of this Agreement.
Complaint, App. B, 85–C–373 (N.D.Ill.) (Collective Bargaining Agreement, art. III, § 3.1 at 6).

L.Ed.2d 898 (1964). In *John Wiley* the union sued under section 301 to compel the company to arbitrate pursuant to their collective bargaining agreement. The company argued that the union failed to follow procedural steps set forth in the agreement as preliminary to arbitration, and that a court should determine whether or not those procedural shortcomings precluded arbitration. The Court rejected this dichotomy, stating that "labor disputes of the kind involved here cannot be broken down so easily into their 'substantive' and 'procedural' aspects." 376 U.S. at 556, 84 S.Ct. at 918. The Court's inquiry is more limited:

> Once it is determined ... that the parties are obligated to submit the subject matter of a dispute to arbitration, "procedural" questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator.

*Id.* at 557, 84 S.Ct. at 918.

This court and others have heeded *John Wiley* and are slow to enter the thicket of deciding whether, under a particular collective bargaining agreement reached by private parties, an alleged violation of the agreement should be characterized as essentially "procedural" or "substantive." Federal courts face sufficiently daunting tasks trying to classify statutory requirements into procedural and substantive categories for purposes of the diversity jurisdiction. The prospect of conducting similar analyses of private labor agreements counsels caution. We agree, therefore, that once it is determined that the underlying dispute concerns a subject matter covered by arbitration provisions, the court's only role is to order arbitration. The arbitrator should determine the effect of any "procedural" shortcomings of either party. *See, e.g., Beer Sales Drivers, Local 744 v. Metropolitan Distribs.*, 763 F.2d 300, 303 (7th Cir.1985); *Washington Hosp. Center v. Service Employees Int'l Union, Local 722*, 746 F.2d 1503, 1506–09 (D.C.Cir.1984); *Automotive Employees Union, Local 618 v. Town and Country Ford, Inc.*, 709 F.2d 509, 511–14 (8th Cir.1983); *International Union v. Folding Carrier Corp.*, 422 F.2d 47, 49 (10th Cir.1970); *Local 51, IBEW v.*

*Illinois Power Co.*, 357 F.2d 916, 918–19 (7th Cir.), *cert. denied*, 385 U.S. 850, 87 S.Ct. 78, 17 L.Ed.2d 79 (1966). *But see Philadelphia Printing Pressmen's Union No. 16 v. International Paper Co.*, 648 F.2d 900, 904 (3d Cir.1981) (failure to file written grievance as required by bargaining agreement is not merely procedural but rather substantive and precludes order to arbitrate).

■ Given the strong policy favoring settlement of labor disputes by private arbitration, *see, e.g.*, 29 U.S.C. § 173, and the concommitant presumption broadly in favor of arbitration when parties agree on an arbitration clause, especially when the clause is broadly phrased, as here, *see AT & T Technologies, Inc.*, 106 S.Ct. at 1419, we conclude that Local 744's failure to pursue certain grievance procedures before seeking arbitration is a matter the significance of which is to be weighed by the arbitrator for whom these parties have contracted. We are convinced that the alleged violation of the settlement agreement here is a subject the parties intended to be a matter of arbitration. That is all we need and should decide. Questions of procedural slippage or shortfalls are for the arbitrator.

### B. Statute of Limitations

Local 744's cross-claim against Fearn seeking to compel arbitration was brought approximately one year after Fearn allegedly breached the settlement agreement and approximately one week after Fearn rejected Local 744's request to arbitrate. Fearn argues that one year is too late; Local 744 argues that one week is soon enough. We agree with Local 744 that its suit to compel arbitration, brought one week after Fearn refused to arbitrate, is timely.

Section 301 provides no express statute of limitations and has thereby generated a great deal of litigation over whose statutes—federal or state—and which statutes —contract, tort or other—apply to which section 301 claims—employees', unions' or employers'. Section 301 claims are gov-

erned by federal substantive law, *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 456–57, 77 S.Ct. 912, 917–18, 1 L.Ed.2d 972 (1957), but generally are subject to statutes of limitations drawn by analogy from state law, *United Auto Workers v. Hoosier Cardinal Corp.*, 383 U.S. 696, 701–07, 86 S.Ct. 1107, 1110–14, 16 L.Ed.2d 192 (1966). *See also United Parcel Serv., Inc. v. Mitchell*, 451 U.S. 56, 61–64, 101 S.Ct. 1559, 1563–65, 67 L.Ed.2d 732 (1981). In *DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 158–63, 103 S.Ct. 2281, 2287–90, 76 L.Ed.2d 476 (1983), however, the Supreme Court rejected state limitations periods and instead held that the federal six-month limitations period for bringing charges of unfair labor practices to the NLRB should be applied by analogy to a hybrid section 301 suit brought by a former employee. *See also Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, —— U.S. ——, 107 S.Ct. 2759, 2767, 97 L.Ed.2d 121 (1987) (applying Clayton Act statute of limitations to civil RICO claims).

Several courts have applied the approach of *DelCostello* to circumstances other than the hybrid section 301 suit brought by an employee. Thus, five circuits have concluded that the six-month federal limit applies to a "pure" section 301 suit brought by a union to compel an employer to arbitrate a grievance. *Associated Brick Mason Contractors v. Harrington*, 820 F.2d 31 (2d Cir.1987); *McCreedy v. Local 971, UAW*, 809 F.2d 1232, 1237–39 (6th Cir.1987); *International Ass'n of Machinists, Local 1688 v. Allied Prods. Corp.*, 786 F.2d 1561, 1564 (11th Cir.1986); *Teamsters Union Local 315 v. Great W. Chem. Co.*, 781 F.2d 764, 769 (9th Cir.1986); *Federation of Westinghouse Independent Salaried Unions v. Westinghouse Elec. Corp.*, 736 F.2d 896, 901–02 (3d Cir.1984). Several district courts have also adopted this conclusion, including a district court in this circuit. *See, e.g., Building Material Drivers, Local 341 v. Beaver Valley Builder's Supply, Inc.*, 645 F.Supp. 79, 81 (W.D.Pa.1986); *United Steelworkers v. Fermet Reclamation, Ltd.*, 627 F.Supp. 1213, 1222 (N.D.Ill. 1986); *Millmen's Union Local 1120 v. Pay*

*Less Drug Stores Northwest, Inc.*, 589 F.Supp. 675, 679 (D.Ore.1984). *But see Chicago Web Printing Pressmen's Union No. 7 v. The Chicago Tribune*, 657 F.Supp. 351, 355–56 (N.D.Ill.1987) (applying state five-year statute of limitations to union's suit to compel arbitration after bargaining relationship broke down). Other district courts have read *DelCostello* to require that the six-month limit apply to a section 301 suit brought by an employee solely against his union. *See Fraser v. James*, 655 F.Supp. 1073, 1080 (D.V.I.1987); *Clark v. Local 95, Int'l Union of Operating Eng'rs*, 588 F.Supp. 1371, 1374 (W.D. Pa.1984). *But cf. Merk v. Jewel Food Stores*, 641 F.Supp. 1024, 1032–37 (N.D.Ill. 1986) (applying state five-year statute of limitations to § 301 claim of ex-employee against employer).

This circuit has been properly circumspect, however, about extending the six-month limitations period to causes of action other than the hybrid section 301 suit, where the analogy may be unwarranted by *DelCostello* or inconsistent with *Hoosier Cardinal* or *Mitchell*. *See International Union of Elevator Constructors v. Home Elevator Co.*, 798 F.2d 222, 227–29 (7th Cir.1986) (state two-year statute of limitations more analogous to union's § 301 suit against employer for contract violations); *Plumbers' Pension Fund, Local 130 v. Domas Mechanical Contractors, Inc.*, 778 F.2d 1266, 1267–70 (7th Cir.1985) (state 90-day statute of limitations more analogous to employer's challenge to arbitration award).

In any event, the case before us does not require that we weigh the appropriateness of analogous state statutes as applied to a pure section 301 suit brought to compel arbitration. We agree with the district court's conclusion that Local 744's claim was timely because the claim was made only a week after Fearn refused to arbitrate and no one has suggested an arguably analogous statute of limitations shorter than one week. Courts that have considered this issue have concluded that the statute of limitations on a suit to compel arbitration begins to run when the com-

pany makes clear to the union that it has made a final decision refusing to arbitrate. *See, e.g., Associated Brick Masons,* 820 F.2d at 38; *McCreedy,* 809 F.2d at 1237 ("A union's cause of action to compel arbitration arises when the employer takes an unequivocal position that it will not arbitrate."); *International Ass'n of Machinists, Local 1688,* 786 F.2d at 1565 (time begins running when "union knew that [the company] would not arbitrate the case on its merits"); *Teamsters Union Local 315,* 781 F.2d at 769 (time runs from "when it was made clear by the Employer to the Union that the Employer would not submit the matter to arbitration"); *Federation of Westinghouse Independent Salaried Unions,* 736 F.2d at 902 (question is when the employer "finally refused arbitration"); *Building Material Drivers,* 645 F.Supp. at 81. It is clear from the record that Local 744 sued within a week after Fearn unequivocally rejected demand for arbitration; thus the suit is timely.

### C. *Arbitration During Hybrid Section 301 Suit*

Fearn contends that the district court erred by ordering arbitration between Local 744 and Fearn while both were named defendants in the hybrid section 301 suit brought by Niro. Apart from a ten-year-old district court decision, *Wyatt v. Interstate & Ocean Trans. Co.,* 439 F.Supp. 1310 (E.D.Va.1977),[2] we have found no case confronting this situation.

In general, once we determine that the subject matter of the dispute before us is covered by an arbitration agreement, we order arbitration without an evaluation of "procedural" questions such as the timeliness of the request for arbitration, exhaustion of grievance procedures and like matters usually left to the arbitrator. *See supra* at 175–76. Fearn contends, nonetheless, that this case is different, because an order to arbitrate would effectively de-

prive Fearn of a valid defense to liability for any wrongful discharge, would violate policies announced by the Supreme Court in *Bowen v. United States Postal Serv.,* 459 U.S. 212, 103 S.Ct. 588, 74 L.Ed.2d 402 (1983), and would disrupt labor relations by encouraging unions to avoid arbitration until coerced by a section 301 suit against them. A consideration of *Bowen* and its predecessors, and an inquiry into how section 301 suits affect private arbitration agreements, reveals, however, that the filing of a hybrid section 301 suit should not preclude the possibility of arbitration pursuant to a collective bargaining agreement.

The "hybrid" section 301 suit evolved in *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). The Court there held that an employee could sue his employer and union under section 301—either separately or in a single suit—and that, after proving that the employer violated the labor agreement and the union breached its duty of fair representation, he might be entitled to recover damages from both the employer and the union. *Vaca,* 386 U.S. at 186–87, 87 S.Ct. at 914–15. Since *Vaca* the Court has made it clear that the claim alleging a breach of the labor agreement is a statutory claim deriving from section 301, while the claim alleging a breach of the union's duty of fair representation is a judicially implied claim necessitated by the special relationship that labor law creates between union and employee. *See DelCostello,* 462 U.S. at 164 & n. 14, 103 S.Ct. at 2290 & n. 14. While formally two separate causes of action, an employee's two claims in a hybrid section 301 suit are also "inextricably interdependent" and comprise a departure from the private settlement of disputes pursuant to a collective bargaining agreement. *See id.* at 165, 103 S.Ct. at 2291.

---

**2.** In a somewhat similar case, *Atwood v. Pacific Maritime Ass'n,* 432 F.Supp. 491, 494–97 (D.C. Ore.1977), *aff'd,* 657 F.2d 1055 (9th Cir.1981), the court denied an employee's motion to dismiss a union from a hybrid § 301 suit, in part because of potential prejudice to the employers. The court also reserved decision on the employ-

ers' motion to compel arbitration (which the employers indicated was contingent upon finding the union in breach of its duty of fair representation), stating that, if necessary, it would consider ordering arbitration rather than proceeding to trial on the contract claim against the employers.

By focusing on the hybrid section 301 action as a unique remedy available to protect *employees* from unfair injury resulting from the operation of the private settlement of disputes between the union and employers, the Supreme Court has refined the outline of the 301 action in several significant ways. *See Bowen*, 459 U.S. at 222, 103 S.Ct. at 595, ("Of paramount importance is the right of the employee ... to be made whole."). For example, the Court has relaxed, in certain circumstances, the requirement that an employee exhaust internal union procedures before bringing a section 301 claim requiring proof of a breach of the duty of fair representation. *See Republic Steel Corp. v. Maddox*, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965); *Vaca*, 383 U.S. at 186, 87 S.Ct. at 914; *Hines v. Anchor Motor Freight*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976); *Bowen*, 459 U.S. at 222, 103 S.Ct. at 594. The Court has also concluded that, in order to protect a wrongfully discharged employee, section 301 must be construed to permit a claim against an employer even where the employer relied innocently on private arbitration that failed only because of union malfeasance. *See Hines*, 424 U.S. at 572, 96 S.Ct. at 1060 (an employer who proves "an erroneous discharge and the Union's breach of duty tainting the decision of the joint committee, [is] entitled to an appropriate remedy against the employer as well as the Union").

And, most dramatically, the Court has recently determined that in hybrid section 301 actions the damages should be apportioned between the union and the employer in accordance with their respective responsibilities for the delay in the employee's reinstatement (or other remedy pursuant to the collective bargaining agreement). *Bowen*, 459 U.S. at 220–28, 103 S.Ct. at 593–98. Apportionment was established in *Vaca*, but only in *Bowen* did the Court, by a five-to-four vote, make it clear that the union is primarily liable for the damages it caused in delaying the employee's remedy by breaching the duty of fair representa-

tion. The Court emphasized that the employer necessarily relies on the union's performing its function in the private grievance/arbitration process and that the employer should not suffer greater liability to the employee because of the union's misconduct. *See Bowen*, 459 U.S. at 224–28, 103 S.Ct. at 595–98.[3]

Fearn insists that *Bowen's* emphasis on apportionment of damage requires that we prohibit a union from seeking to compel arbitration once a hybrid section 301 suit has commenced against the employer and the union. We disagree. *Bowen* held that when the private arbitration procedure has failed and injured the employee, the employee should be compensated under section 301, and, to the extent possible, should recover damages from each responsible party in proportion to the damage each caused. Apportionment, according to the Court, best protects the interests both of the employer and the union, and ultimately the interest of the employee.

Fearn suggests, and the Court has agreed, *see Bowen*, 459 U.S. at 227 n. 15, 103 S.Ct. at 597 n. 15, that, if the union is permitted to agree to a settlement with the employee after a hybrid section 301 suit is brought (pursuant to which the union would acknowledge a breach of its duty of fair representation in exchange for a pledge from the employee to seek recovery only from the employer), the employer might be unfairly saddled with the whole liability for a wrongful discharge. The Court also recognized, however, the need to permit a union to reevaluate its representation of a member employee, to bring a potential breach of its duty to the attention of the employer and, perhaps, to mitigate liability for subsequent damages. *See id.* at 227 n. 15, 103 S.Ct. at 597 n. 15 (if union changed its position and supported the employee's claim, "[o]ur holding today would not prevent a jury from taking such action into account"). Clearly there exists a tension between permitting a union to pull back from litigation in a manner unfair to

---

**3.** It is clear, however, that the employer remains secondarily liable to the employee for the full loss of back pay, to protect the employee when damages are not collectible against the union. *Bowen*, 459 U.S. at 223 n. 12, 103 S.Ct. at 595 n. 12.

the employer and locking parties into positions at odds with subsequent events or economic realities.

 We conclude that in the circumstances of this case the balance must be struck in favor of permitting Local 744 to seek arbitration. When we consider the central (and, in fact, exalted) position that private dispute resolution plays in labor relations, we must be hesitant to prohibit any party from *seeking* to invoke these private procedures. We believe that no strict rule is appropriate that would bar either defendant in a hybrid section 301 suit from bringing a timely claim alleging that the underlying dispute is subject to arbitration. To prohibit such claims would unnecessarily shackle both courts and litigants. We must instead follow the guidance of the Supreme Court and ensure that the place of privately established grievance procedures is a secure one. The step we take today enhances the efficiency of private procedures by concluding that the filing of a hybrid section 301 suit does not slam the door on arbitration if a party thereafter seeks to compel it.

In line with the apparent directions of the Supreme Court, the dynamics of labor relations suggest that we allow parties to seek arbitration even after hybrid section 301 suits are brought. Any conflict between the federal policy of apportionment in hybrid section 301 suits and the requirements of particular labor contracts can, of course, be eliminated by subjecting the contracts to collective bargaining. If the union and the employer agree, apportionment of damages may be written into the arbitration provisions. In addition, any concern that the union and the employee could violate the policies of section 301 by conspiring to soak the employer for the full damages may not be realistic. In the context of a section 301 suit, it is far from clear that a union would likely protect itself from liability by admitting it breached its duty to the employee in exchange for a promise from the employee not to sue it for

damages. *Cf. Bowen*, 459 U.S. at 227 n. 15, 103 S.Ct. at 597 n. 15. An employer who was sued could very likely either implead the union in the section 301 suit on a theory of contribution or, with the union's admission of breach of duty in hand, bring a later separate action for contribution.[4]

### III.

We therefore conclude that the alleged breach of the settlement agreement is an arbitrable subject, that the cross-claim to compel arbitration is timely and that Local 744 is not prohibited from seeking arbitration merely because the employee has commenced a hybrid section 301 suit against Local 744 and Fearn. The judgment of the district court is therefore

Affirmed.

---

4. In the present case the district court dismissed Niro's hybrid § 301 suit without prejudice when it ordered arbitration. This approach is proper, but the district court, in its discretion, might also simply stay the § 301 proceedings to permit arbitration to proceed. We believe either disposition would be within the power of the district court.