INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS DISTRICT NO. 10, Plaintiff,

v.

DINGS COMPANY, Defendant.

No. 98–C–737.

United States District Court,
E.D. Wisconsin.

Feb. 22, 1999.

Matthew R. Robbins, Previant, Goldberg, Uelmen, Gratz, Miller & Brueggeman, S.C., Milwaukee, WI, for Plaintiff.

Thomas W. Scrivner, Michael Best & Friedrich, LLP, Milwaukee, WI, for Defendant.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

This is an action under § 4 of the United States Arbitration Act, 9 U.S.C. § 4, to compel arbitration of the parties' dispute concerning the defendant's alleged failure to post jobs and the wage rate for posted jobs. The parties have each filed a motion for summary judgment. The plaintiff's motion for summary judgment will be granted, and the defendant's motion for summary judgment will be denied.

## I. SUMMARY JUDGMENT STANDARD

A motion for summary judgment will be granted when there are no genuine issues as to material fact and the movant is entitled to judgment as a matter of law. *See* Rule 56(c), Federal Rules of Civil Procedure. Under Rule 56(c), the movant must show the following: (1) no genuine issue of material fact exists, and (2) its entitlement to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Only "genuine" issues of "material" fact will defeat an otherwise properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

As defined by the United States Supreme Court, "material" facts are those facts which, under the governing substantive law, "might affect the outcome of the suit." *Id.* at 248, 106 S.Ct. 2505. A dispute over such material facts is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* (citing *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). If the evidence presented by the party or parties opposing is "merely colorable," or is not "significantly probative," summary judgment may be granted. *Id.* at 249–250, 106 S.Ct. 2505.

## II. UNDISPUTED FACTS

Each of the parties included with its respective motion for summary judgment proposed findings of fact which it believed constituted the factual propositions upon which there is no genuine issue of material fact and evidentiary material in support of those factual assertions. In addition, the parties each filed a response to the other party's proposed findings. Upon deciding a motion for summary judgment, the court will conclude that there is no genuine issue of material fact as to any proposed finding of fact to which no

proper response is set out. *Stewart v. McGinnis*, 5 F.3d 1031, 1034 (7th Cir.1993), *cert. denied*, 510 U.S. 1121, 114 S.Ct. 1075, 127 L.Ed.2d 393 (1994); Local Rules 6.04 and 6.05(d).

In view of the above, the court deems the following facts to be uncontroverted. The International Association of Machinists and Aerospace Workers of District No. 10 ["the Union"], and Dings Company ["Dings"] are parties to a collective bargaining agreement ["CBA"], effective March 1, 1995, to March 1, 1999. (Plaintiff's Proposed Findings ["PPF"] ¶ 1; Defendant's Proposed Findings ["DPF"] ¶ 3.) Dings is a company which manufactures and installs electric motor brakes, clutches and industrial magnets. (DPF ¶ 1.) At all relevant times, the Union represented approximately 50 hourly employees at Dings' manufacturing facility located in Milwaukee. (DPF ¶ 2.)

The CBA contains a grievance procedure pursuant to which disputes between the Union and Dings are to be processed. The CBA provides, in pertinent part:

It is agreed that if any controversy or dispute arises concerning wages, hours or conditions of employment, such controversy or dispute shall be regarded as a grievance, and for consideration must be submitted for processing within three (3) working days after discovery in the following manner:

Step 1. An aggrieved employee shall present his grievance to his Shop or Department Foreman. If he so elects, he may be accompanied by his Committeeman or Steward. The foreman shall give his decision to the Steward and the aggrieved employee within two (2) working days after the submission of the complaint.

Step 2. If a satisfactory settlement is not reached as a result of Step 1, the grievance shall be reduced to writing. The Union Committee, thereupon, will submit the grievance to the Plant Manager who will give his decision, in writing, to the Union Committee within five (5) working days of submission of the grievance.

Step 3. If a satisfactory settlement is not reached as a result of Step 2, the Union Committee and a Union Representative will, within five (5) days, submit the grievance to management or their designated representative and he shall give his decision to the Union Committee within five (5) working days of submission of the grievance.

Step 4. If a satisfactory settlement is not reached as a result of Steps 1, 2, 3, the moving party will have a maximum period of twenty (20) working days to present the grievance to arbitration . . . .

(DPF ¶ 4; CBA, Article III 3.01.) Under the CBA, the arbitrator's authority is defined as follows:

It is understood that the jurisdiction of the arbitrators shall be limited to the application of this Agreement and the arbitrators shall have no jurisdiction to add to, modify, or extend the obligations imposed by the Agreement.

(DPF ¶ 5; CBA, Article III 3.01.)

In early spring of 1995, a dispute arose between the parties regarding the appropriate rate of pay to state when job postings were used to fill permanent job vacancies. (DPF ¶ 7.) The Union contends that a job posting has to state a pay rate of 90% of the departing incumbent's rate of pay, while Dings insists that there is no requirement to state such a rate on postings. (Id.)

On April 3, 1995, the Union filed a grievance over "the failure of [Dings] to post permanent job vacancies and at a wage rate of 90% of the departing employee's rate" in violation of Article IX, Section 9.04 of the CBA. (PPF ¶ 2.) On April 10, 1995, at the second step of the grievance procedure under Article III, Section 3.01, Mr. Kornowski, Dings' manager of manufacturing, denied the Union's April 3, 1995, grievance. (PPF ¶ 3.) Between April 17, 1995, and June 18, 1997, the Union filed 24 individual grievances over Dings' failure to post numerous permanent job vacancies and the wage rate for vacant positions in violation of Article IX, Section 9.04 of the Agreement. (PPF ¶ 4.) These 24 grievances were not processed beyond Step 2 of the grievance procedure. (Hornby Supplemental Aff. ¶ 7; Pural Aff. ¶ 15.)

By letter of February 24, 1997, the Union informed Dings that it was moving the "job

posting grievance" to arbitration. (DPF ¶ 9.) The Union believed this statement contemplated that two issues would be submitted to arbitration: the issue regarding Dings' failure to post job vacancies, and the issue regarding the appropriate wage rate to be posted on job vacancies. (PPF ¶ 6; Hornby Aff. ¶ 7; Hornby Supplemental Aff. ¶ 7.) The Union was of the opinion that it did not need to pursue the 24 additional grievances concerning the posting of job vacancies past Step 2 of the grievance procedure because they were going to be resolved through arbitration with the April 3, 1995, grievance. (Hornby Supplemental Aff. ¶ 7.) Dings, on the other hand, was of the opinion that only one issue was to be submitted to arbitration—the issue concerning the proper wage rate to be posted in job vacancies. (Berkoff Aff. ¶ 5.)

On August 26, 1997, the parties appeared at a hearing before an arbitration panel consisting of arbitrator Jay E. Grenig, Brian Nahey, the president and CEO of Venturedyne, Ltd., and William F. Christianson, union business agent. (PPF ¶ 5; DPF ¶¶ 16 and 17.) The Union believed that this hearing would resolve the issue of the proper wage rate for posted jobs, as well as the 24 additional grievances involving Dings' failure to post the permanent jobs and the proper wage rate. (PPF ¶ 6.) Dings took the position that the only issue to be decided was the proper wage rate for posted vacancies. The hearing was adjourned and rescheduled to June 17, 1998, to allow the parties an additional opportunity to determine which issue or issues were to be submitted to arbitration. (PPF ¶ 8; DPF ¶¶ 18 and 19.)

On May 29, 1998, Mr. Grenig wrote to the attorneys for the Union and Dings stating that they had three choices with respect to their upcoming arbitration hearing: (1) agree to a statement of the issue or issues; (2) agree that the arbitration panel has the authority to formulate the issue or issues; or (3) to seek resolution regarding the scope of the issue in another forum. (PPF ¶ 10; DPF ¶ 19.) By letter of June 3, 1998, the Union notified Mr. Grenig that it was willing to have him formulate the issue or issues. (PPF ¶ 12; DPF ¶ 20.) However, on June 11, 1998, Dings wrote a letter to Mr. Grenig stating that it was prepared to proceed to arbitrate the wage rate issue only and that it was unwilling to have Mr. Grenig formulate the issues. (PPF ¶ 15; DPF ¶ 21.)

As a result of the parties' correspondence, Mr. Grenig canceled the hearing scheduled for June 17, 1998, stating "I do not believe I have authority to proceed in the absence of an agreed upon statement of the issue or an agreement that I can formulate the issue." (DPF ¶ 22.) At all times since June 17, 1998, Dings has refused to arbitrate all of the grievances in one proceeding and has been unwilling to have Mr. Grenig formulate the issue or issues. (PPF ¶ 17.)

### III. LAW AND ANALYSIS

The Union argues that the court should order the parties to arbitrate, in one proceeding, all of the grievances concerning Dings' failure to post jobs and failure to post the wage rates for the vacant jobs. Dings contends, however, that, under the CBA, it is only required to arbitrate the April 3, 1995, grievance pertaining to its alleged failure to post the proper wage rates for vacant jobs. According to Dings, it is not obligated to arbitrate the April 3, 1995, grievance *and* the 24 "job posting grievances" in one proceeding because the 24 job posting grievances were not completely processed through the grievance procedure and because the CBA permits only "one grievance—in the singular— [to] be processed and arbitrated at the same time." (*See* defendant's brief in support of motion for summary judgment.)

In determining whether a particular dispute is subject to arbitration, the court must turn to the collective bargaining agreement between the parties. It is well established that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit." United *Steelworkers of America v. Warrior & Gulf Nav. Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *AT & T Technologies, Inc. v. Communications Workers,* 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986); *Niro v. Fearn Int'l, Inc.,* 827 F.2d 173, 175 (7th Cir.1987). There is a strong federal

policy in favor of arbitration. *AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). Nevertheless, an order to arbitrate

> should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.

*Id.* (quoting *United Steelworkers of America v. Warrior & Gulf Nav. Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)).

■ Notwithstanding the strong federal policy favoring arbitration, the court's power to enforce an arbitration agreement is limited. Indeed, the United States Supreme Court has warned that courts are not to delve into the procedural aspects of arbitration:

> Once, it is determined ... that the parties are obligated to submit the subject matter of a dispute to arbitration, "procedural" questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator.

*John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 557, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964). Moreover, the court of appeals for the seventh circuit has interpreted the Supreme Court's decision in the *John Wiley* even more restrictively. *See Niro v. Fearn Int'l, Inc.,* 827 F.2d at 176. *Niro* directs that once the threshold question of the arbitrability of the underlying subject matter of a dispute is answered in the affirmative, all other questions, whether they are characterized as procedural or substantive, are for the arbitrator to decide. *Id.* The court of appeals explained the role of a court in analyzing arbitration agreements as follows:

> This court and others have heeded *John Wiley* and are slow to enter the thicket of deciding whether, under a particular ... agreement reached by the private parties, an alleged violation of the agreement should be characterized as essentially "procedural" or "substantive." Federal courts face sufficiently daunting tasks trying to classify statutory requirements into procedural and substantive categories for pur-

poses of the diversity jurisdiction. The prospect of conducting similar analyses of private labor agreements counsels caution. We agree, therefore, that once it is determined that the underlying dispute concerns a subject matter covered by arbitration provisions, the court's only role is to order arbitration. The arbitrator should determine the effect of any "procedural" shortcomings of either party.

*Id.*

■ As a preliminary matter, it must be noted that Dings' refusal to arbitrate the 24 grievances filed after April 17, 1995, is not based on any contention that the subject matter of those disputes is not arbitrable. Nor could such an argument be seriously entertained in view of the language of the CBA which states that "any controversy or dispute .... concerning wages, hours or conditions of employment" is subject to the grievance procedure, including arbitration. (CBA, Art. III, 3.01.) Clearly, the issue of whether Dings was required under the terms of the CBA to post the vacant positions at issue in those 24 grievances and their rate of pay are matters concerning "wages, hours or conditions of employment." Thus, I find that the dispute underlying the 24 grievances concern a subject matter that is covered by the parties' collective bargaining agreement.

■ In light of this conclusion and the precedent set forth in *John Wiley* and *Niro,* Dings faces an uphill battle in arguing that this court should not order arbitration of all of the grievances advanced by the Union. Nevertheless, Dings raises a number of arguments against arbitration, including its contention that the Union's failure to process the 24 grievances through *all* steps of the grievance procedure renders those 24 grievances nonarbitrable. In support for this argument, Dings relies on the decision of the court of appeals for the third circuit in *Philadelphia Printing Pressmen's Union No. 16, Aniline Division v. International Paper Company, Single Service Division,* 648 F.2d 900 (3rd Cir.1981), in which the court affirmed the district court's decision precluding an order to compel arbitration because the union ignored the grievance procedure in its entirety

by failing to reduce the grievance to writing as required by the collective bargaining agreement. The court in *Philadelphia Printing* reasoned that the union's failure to follow the grievance procedures set out in the collective bargaining agreement impacts on the determination of whether the dispute is subject to arbitration, a matter which is within the province of the court not the arbitrator. *Id.*

In my opinion, the holding of the appellate court in *Philadelphia Printing* is not controlling because it ignores the distinction made by the Supreme Court in *John Wiley* between substantive and procedural issues and is contrary to the controlling precedent of the court of appeals for the seventh circuit as stated in *Niro.* In *John Wiley,* the Supreme Court determined that the arguments advanced by the company against arbitration—that arbitration was precluded because the first two steps of the three-step grievance procedure had not been filed by the union and because the union failed to provide the company with timely notice of the grievance—were procedural questions which were for the arbitrator. *John Wiley,* 376 U.S. at 556–557, 84 S.Ct. 909.

I do not believe that any cogent basis exists upon which to distinguish between the issues raised by the company in *John Wiley* which the Supreme Court deemed procedural and Ding's argument that the Union did not advance the 24 grievance past step two of the collective bargaining agreement. Further, the court of appeals for the seventh circuit specifically recognized in *Niro* that it's holding was contrary to the holding in *Philadelphia Printing. Niro,* 827 F.2d at 176.

Hence, I find that the issue of whether the Union's failure to process the 24 grievances past step two of the grievance procedure bars arbitration is a procedural issue which does not preclude this court from ordering the parties to submit to arbitration. Under the decision in *John Wiley* and *Niro,* this issue is reserved for the arbitrator and not for this court.

■ Dings also argues that this court should not direct the parties to arbitrate the 24 grievances with the April 3, 1995, grievance because the CBA between the parties precludes arbitration of multiple grievances. Dings maintains that the CBA's reference to the word "grievance" in the singular evidences an intent not to consolidate grievances in a single arbitration proceeding.

I find that the issue of whether multiple grievances may be submitted to the arbitrator in one proceeding where, as here, each of the grievances involves a proper subject for arbitration is a procedural question for the arbitrator. I am not convinced, as urged by the defendant, that the use of the word "grievance," in the singular constitutes a specific provision in the contract prohibiting multiple grievance arbitration. Other courts which have addressed this issue have arrived at the same conclusion. *See Avon Products, Inc. v. International Union, United Auto Workers of America,* 386 F.2d 651 (8th Cir. 1967); *American Can Co. v. United Papermakers and Paperworkers,* 356 F.Supp. 495 (E.D.Pa.1973); *Fitchburg Paper Co. v. MacDonald,* 242 F.Supp. 502 (D.Mass.1965).

Dings also contends that this court should not order arbitration of all of the disputes in one proceeding because the arbitration panel has already decided that it does not have the authority under the CBA to formulate the issue without agreement of both of the parties. According to Dings, Mr. Grenig's cancellation of the hearing scheduled for June 17, 1998, amounted to a decision that the CBA did not grant the panel the authority to decide multiple grievances in one forum.

The problem with the defendant's argument is that it is mixing apples with oranges. The decision of Mr. Grenig that he could not "formulate the issue" before him in the absence of an agreement to do so by the parties does not amount to a determination that the CBA prohibits the submission of multiple grievances in one proceeding. Mr. Grenig's decision to cancel the arbitration hearing because the parties could not agree on the issue to be submitted to him or to allow him to formulate the issue left the parties with one further alternative: to "seek resolution" or "formulation of the issue" in "another forum." This is demonstrated by Mr. Grenig's letter to the parties advising them that they had the three alternatives recited above.

(Union Ex. F.) The plaintiff proceeded with the third option when it filed the instant lawsuit. I believe that a federal district court qualifies as "another forum."

My determination that the grievances presented by the Union as to whether the defendant failed to post a proper wage rate and failed to post job vacancies are proper subjects for arbitration amounts to a formulation of the issues by this court. This process is exactly what Mr. Grenig contemplated in his letter to the parties. Contrary to Ding's suggestion, an order from this court directing the parties to submit those issues to arbitration does not "vacate" any decision of the arbitrator.

In sum, I conclude that the April 3, 1995, grievance as well as the subsequent 24 grievances which protested Dings' failure to post job vacancies are arbitrable. Furthermore, I find that under controlling case law, the procedural questions of whether these multiple grievances can be resolved in a single proceeding and whether the 24 grievances are barred because they were not properly processed may be submitted to the arbitration panel. Accordingly, the plaintiff's motion for summary judgment will be granted, and the defendant's motion for summary judgment will be denied.

### IV. ATTORNEY'S FEES

The Union asks this court to enter and award of attorney's fees in its favor but fails to specify the statute or procedural rule pursuant to which it seeks such relief. The plaintiff does not cite Rule 11, Federal Rules of Civil Procedure, which governs sanctions in federal proceedings, as a basis for its request; thus, the court will not treat its application as one for sanctions under that rule. Instead, it appears that the Union's request is one pursuant to the Arbitration Act, which does not explicitly authorize the award of attorney's fees. When no statute authorizes the award of attorney's fees in a particular case, "the prevailing party is entitled to attorney's fees only if his opponent's suit or defenses was frivolous, which ... cases define to mean brought in bad faith— brought to harass rather than to win." *Local 232, Allied Industrial Workers of America, AFL–CIO v. Briggs & Stratton Corp.*, 837 F.2d 782, 789 (7th Cir.1988) (quoting *Miller Brewing Co. v. Brewery Workers Local Union No. 9*, 739 F.2d 1159, 1167 (7th Cir. 1984)). While the arguments advanced by Dings in this action were contrary to the great weight of controlling authority, there is no cogent evidence in the record to suggest that Dings resisted arbitration in bad faith. Therefore, I will deny the Union's request for attorney's fees.

### ORDER

Therefore, IT IS ORDERED that the plaintiff's motion for summary judgment be and hereby is granted.

IT IS ALSO ORDERED that the plaintiff's request for attorney's fees be and hereby is denied.

IT IS FURTHER ORDERED that the defendant's motion for summary judgment be and hereby is denied.

IT IS FURTHER ORDERED that the parties be and hereby are directed to submit the April 3, 1995, grievance as well as the subsequent 24 grievances which protested Dings' failure to post job vacancies and the proper wage rate to arbitration.

IT IS FURTHER ORDERED that the plaintiff's action be and hereby is dismissed, with prejudice but with costs in favor of the plaintiff.