[Cite as *Caskey v. Sanford-Brown College*, 2012-Ohio-1543.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 97261**

## JON McCASKEY

PLAINTIFF-APPELLANT

vs.

## SANFORD-BROWN COLLEGE, ET AL.

DEFENDANTS-APPELLEES

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-743061

**BEFORE:** Celebrezze, J., Boyle, P.J., and Jones, J.

**RELEASED AND JOURNALIZED:** April 5, 2012

**ATTORNEY FOR APPELLANT**

L. Bryan Carr
The Carr Law Firm
1392 SOM Center Road
Mayfield Heights, Ohio   44124


**ATTORNEYS FOR APPELLEES**

Maureen P. Tracey
Elizabeth A. Davis
David J. Tocco
Vorys, Sater, Seymour & Pease, L.L.P.
1375 East Ninth Street
2100 One Cleveland Center
Cleveland, Ohio   44114-1724

FRANK D. CELEBREZZE, JR., J.:

{¶1} Plaintiff-appellant, Jon McCaskey, a graduate of Sanford-Brown College ("Sanford-Brown"), seeks reversal of a trial court order staying his case against Sanford-Brown and one of its employees, Kimberly Cole, pending arbitration. He argues that the arbitration provision is a nullity, unconscionable, and inapplicable. After a thorough review of the record and law, we affirm the trial court's order staying the case pending arbitration.

I. Factual and Procedural History

{¶2} In 2009, McCaskey wished to enroll in a cardiovascular sonography program at Sanford-Brown. He executed an "Enrollment Agreement" setting forth the costs of tuition, the length of the program, the applicable fees, and the date the program was to commence. The agreement also contained several contract provisions, including cancellation and discrimination policies and a lengthy arbitration provision.

{¶3} In March 2010, McCaskey was close to completion of the program and doing very well academically. He applied for externships with the Cleveland Clinic Foundation and University Hospitals. After scheduling interviews, McCaskey caused his academic transcripts to be sent to these hospitals from Sanford-Brown. The materials Sanford-Brown delivered indicated McCaskey had failed his final exams and been expelled from the program. In fact, McCaskey's grade point average was excellent, and he graduated from the program in September 2010.

**{¶4}** McCaskey asserts that because of Sanford-Brown's false statements, he was not given an opportunity to interview with these hospitals or otherwise obtain an externship.

**{¶5}** McCaskey filed suit against Sanford-Brown and Cole, who is alleged to have sent the information to the hospitals. Before filing an answer, Sanford-Brown moved to stay the proceedings pending arbitration. After extensive briefing and hearing, the trial court granted Sanford-Brown's motion and stayed the case. McCaskey appealed that order to this court assigning a single error.

## II. Law and Analysis

### A. Enforcement of an Arbitration Provision

**{¶6}** McCaskey's sole assignment of error states: "The trial court erred in granting appellees' motion to stay and in ordering the case to arbitration." McCaskey advances a tripartite attack on this decision, arguing the trial court lacked the ability to stay the case, the provision is a legal nullity, and the provision is unenforceable by Sanford-Brown or Cole.

#### i. Standard of Review

**{¶7}** The standard of review applicable to this case is in dispute and may depend on the type of questions raised challenging the applicability of the arbitration provision. This court has variable holdings in the area, but the most recent pronouncement indicates that "[w]hen addressing whether a trial court has properly granted a motion to stay litigation pending arbitration, this court applies an abuse of discretion standard." *U.S. Bank, N.A. v. Wilkens*, 8th Dist. No. 96617, 2012-Ohio-263, ¶ 13. However, that

standard applies in only very limited situations, such as a determination that a party has waived its right to arbitrate a given dispute. *See Milling Away, L.L.C. v. UGP Properties, L.L.C.,*

8th Dist. No. 95751, 2011-Ohio-1103, ¶ 8. A de novo standard applies to questions of whether a party has agreed to submit an issue to arbitration. *Shumaker v. Saks Inc.*, 163 Ohio App.3d 173, 2005-Ohio-4391, 837 N.E.2d 393 (8th Dist.), citing *Vanyo v. Clear Channel Worldwide*, 156 Ohio App.3d 706, 2004-Ohio-1793, 808 N.E.2d 482 (8th Dist.).

{¶8} Likewise, the Ohio Supreme Court has articulated that a de novo standard of review applies when arguing the unconscionability of an arbitration clause. *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12. However, "[w]hen a trial court makes factual findings * * * supporting its determination that a contract is or is not unconscionable, such as any findings regarding the circumstances surrounding the making of the contract, those factual findings should be reviewed with great deference." *Id.* at ¶ 38.

{¶9} When determining whether a specific issue is encompassed by an arbitration provision, a mixed question of law and fact arises. But this court has cogently addressed the proper standard that applies to a motion to stay pending arbitration and addressed the apparently disparate holding of the Eighth District on this topic. *N. Park Retirement Community Ctr., Inc. v. Sovran Cos., Ltd.*, 8th Dist. No. 96376, 2011-Ohio-5179. The *Sovran* panel found that the language of R.C. 2711.02(B) created a mandatory duty to stay the proceedings, leaving no discretion for the trial court upon being satisfied that the matter was subject to arbitration. The court reasoned, "[t]he abuse of discretion standard

of review has no application in the context of the court deciding to stay proceedings pending the outcome of arbitration because a stay in such circumstances is mandatory, not discretionary." *Id.* at ¶ 7. Therefore, we apply a de novo standard of review to questions of unconscionability and whether an issue is encompassed by a given arbitration clause.

### ii. Authority to Issue a Stay Pending Arbitration

**{¶10}** McCaskey first argues the trial court does not have authority to compel arbitration because Sanford-Brown did not file a motion to compel, only a motion to stay pending arbitration. However, the trial court's order states, "motion to stay pending arbitration is granted. Case is hereby stayed pending completion of arbitration as ordered." The effect of the court's order was to send the case to arbitration, but the order did not specifically compel arbitration.

**{¶11}** Where a party moves for a stay pending arbitration, pursuant to R.C. 2711.02(B), the court "shall * * * stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement, provided the applicant for the stay is not in default in proceeding with arbitration."

**{¶12}** For support, McCaskey points to *Drake v. Barclay's Bank Delaware, Inc.*, 8th Dist. No. 96451, 2011-Ohio-5275, ¶ 6. But in *Drake*, this court overruled an argument that the trial court must hold a hearing on a motion to stay pending arbitration where no motion to compel arbitration was pending. While a motion to compel arbitration requires a hearing according to R.C. 2711.03, one is not required under R.C. 2711.02. Even if it were, the trial court did hold an oral hearing on the motion to stay to

ensure that the matter was subject to arbitration. Therefore, the trial court had the ability to stay the case.

### iii. Applicability to Contracting Parties and Employees

{¶13} McCaskey argues that Sanford-Brown is not a business entity capable of entering into contracts because its corporate registration was cancelled in 2006. Therefore, he claims, it could not enforce the arbitration provision. Appellant points to R.C. 1701.88, dealing with the winding up of corporate business after dissolution, to assert that Sanford-Brown had no authority to enter into contracts, and therefore, the arbitration clause is not binding.

{¶14} The corporate entity "Sanford-Brown College, Inc.," did have its articles cancelled by the Ohio secretary of state in 2006, but that is not the name of the contracting party in this case. The contract was executed by "Sanford-Brown College," an alternate business name properly registered with the secretary of state for Ultrasound Technical Services, Inc. ("UTSI") since 2008.

{¶15} Sanford-Brown, a Delaware corporation, had the ability to enter into contracts under 8 Del.C. 122(13), similar to R.C. 1701.13(F)(2). Further, people may adopt any fictitious name they choose so long as it is not done with fraudulent purpose or against public policy. *In re Wurgler*, 136 Ohio Misc.2d 1, 2005-Ohio-7139, 844 N.E.2d 919 (P.C.). This right has long been extended to corporations in Ohio. 1932 Ohio Atty.Gen.Ops. No. 1294; *see also* R.C. 1329.01(A)(3) (the definition of "person" includes corporations).

**{¶16}** There is a statute that arguably may prevent Sanford-Brown from enforcing the arbitration provision. R.C. 1329.10(B) provides:

> No person doing business under a trade name or fictitious name shall commence or maintain an action in the trade name or fictitious name in any court in this state or on account of any contracts made or transactions had in the trade name or fictitious name until it has first complied with section 1329.01 of the Revised Code * * * but upon compliance, such an action may be commenced or maintained on any contracts and transactions entered into prior to compliance.

**{¶17}** Even if Sanford-Brown's trade name was not registered, the contract is still legally binding on the parties. *Baldwin Realty Co. v. Smith*, 23 Ohio N.P. (N.S.) 489, 31 Ohio Dec. 527, 1920 WL 601 (1920). Sanford-Brown would just be barred from enforcing the contract through Ohio courts until it registered the name with the secretary of state pursuant to R.C. 1329.10(B). *See Cheliotis v. Gould*, 2d Dist. No. 14471, 1994 WL 701963, *4-5 (Dec. 14, 1994). Because the name was registered and Sanford-Brown is not attempting to commence or maintain suit, the statute has no application here.

**{¶18}** McCaskey also argues that Cole cannot hide behind an arbitration provision because she was not a party named in the contract. Generally, non-signatories to a contract are not subject to its provisions. "Nonetheless, in some circumstances non-signatories to contracts can be contractually bound by ordinary contract and agency principles." *Sovran*, 2011-Ohio-5179, ¶ 17, citing *Short v. Resource Title Agency, Inc.*, 8th Dist. No. 95839, 2011-Ohio-1577, ¶ 14.

**{¶19}** Here, Cole is an employee of Sanford-Brown acting within her capacity as an employee when sending transcript information to potential employers of Sanford-Brown students. The arbitration provision also encompasses any dispute

involving "any act or omission regarding the Student's relationship with [Sanford-Brown, or] its employees * * *."

{¶20} This provision clearly encompasses disputes between signatories and employees acting as employees of Sanford-Brown, including Cole. The Enrollment Agreement specifically mentioned employees of Sanford-Brown, and agency principles also allow Cole to make use of the provision.

{¶21} McCaskey also argues that the provision does not encompass the type of dispute involved in this case. However, the provision is very broad and applies to "[a]ny disputes, claims or controversies * * * arising out of or relating to * * * career service assistance" by Sanford-Brown. This distinguishes the present case from *Drake*, 2011-Ohio-5275, and *Shumaker*, 2005-Ohio-4391. In those two cases, this court held that the dispute did not relate to the contract provisions provided in the applicable agreements. The clause in this case specifically includes disputes about "career service assistance." Therefore, the arbitration clause applies to the case unless the agreement is otherwise unenforceable as discussed below.

iv. Unconscionability

{¶22} McCaskey also argues that the trial court erred in granting the motion to stay because the arbitration clause is both procedurally and substantively unconscionable.

{¶23} In Ohio, arbitration is favored as a more expedient and cost effective means of resolving disputes, and any doubts in the applicability of a given provision should be resolved in favor of arbitration. *Hayes v. Oakridge Home*, 122 Ohio St.3d 63, 2009-Ohio-2054, 908 N.E.2d 408, ¶ 15. However, reasons in law or equity may exist to

preclude binding a party to arbitrate a dispute. Unconscionability is such a reason. *Id.* at ¶ 19.

> Unconscionability includes both "'an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.'" The party asserting unconscionability of a contract bears the burden of proving that the agreement is both procedurally and substantively unconscionable. (Internal citations omitted.) *Taylor*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, at ¶ 34.

### a. Procedural Unconscionability

**{¶24}** According to the case law in Ohio, unconscionability comes in two flavors — procedural and substantive.

> Procedural unconscionability examines the bargaining process and may include factors such as the "'age, education, intelligence, business acumen and experience, * * * who drafted the contract, * * * whether alterations in the printed terms were possible, [and] whether there were alternative sources of supply for the goods in question.'" *Id.* at ¶ 44, quoting *Collins v. Click Camera & Video, Inc.*, 86 Ohio App.3d 826, 834, 621 N.E.2d 1294 (2d Dist.1993), quoting *Johnson v. Mobil Oil Corp.*, 415 F.Supp. 264, 268 (E.D.Mich.1976).

**{¶25}** To support a claim of procedural unconscionability, McCaskey claims he was a young student with little business acumen, unfamiliar with arbitration provisions, rushed when given the contract with inadequate time to read and understand the document, and Sanford-Brown was in a better bargaining position. It should be noted that it is McCaskey's burden to show, based on evidence in the record, that the arbitration provision is procedurally unconscionable. *Hayes*, 122 Ohio St.3d 63, 2009-Ohio-2054, 908 N.E.2d 408, at ¶ 27.

**{¶26}** What we know from the record is that McCaskey is a bright, young individual capable of achieving excellent academic success at a post-secondary level.

There is no evidence that he was prevented from reading the contract before signing or that he is incapable of understanding the document based on a mental or physical impairment. The Enrollment Agreement is not some voluminous tome, but consists of two oversized pages. The print on the second page containing the arbitration clause is small, but not exceedingly so. Also, directly above the signature line in bold type is the advisement that "THIS CONTRACT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCEABLE BY THE PARTIES."

{¶27} McCaskey also insists the contract is one of adhesion, and, as such, it should be viewed with scepticism with any doubts resolved in his favor. A "contract of adhesion" is "a standardized form contract prepared by one party, and offered to the weaker party, usually a consumer, who has no realistic choice as to the contract terms." *Taylor*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, at ¶ 49, citing *Black's Law Dictionary* 342 (8th Ed.2004). These take-it-or-leave-it contracts have significantly grown in frequency in modern society. However, the fact that McCaskey claims he could not alter the terms of the agreement does not mean the terms are unenforceable. There is no evidence that McCaskey attempted to alter any terms. Also, there is no evidence of oppressive or fraudulent intent as there was in *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 700 N.E.2d 859 (1998).

{¶28} An important consideration is "whether 'each party to the contract, considering his obvious education or lack of it, [had] a reasonable opportunity to understand the terms of the contract, or were the important terms hidden in a maze of fine print * * *?'" *Blackburn v. Ronald Kluchin Architects, Inc.*, 8th Dist. No. 89203,

2007-Ohio-6647, ¶ 29, quoting *Vanyo v. Clear Channel Worldwide*, 156 Ohio App.3d 706, 2004-Ohio-1793, 808 N.E.2d 482 (8th Dist.), ¶ 18, citing *Ohio Univ. Bd. of Trustees v. Smith*, 132 Ohio App.3d 211, 724 N.E.2d 1155 (4th Dist.1999). Here, McCaskey was objectively capable of understanding the provisions included in a two-page contract. There are no allegations that an infirmity or incapacity impacted McCaskey's ability to understand the Enrollment Agreement's provisions.

{¶29} McCaskey had the opportunity to read the agreement, and the above-quoted advisement put him on notice that an arbitration provision was contained in the agreement. There is simply no evidence that the bargaining process was so oppressive as to remove meaningful choice. This is in contrast to the process used in *Rude v. NUCO Edn. Corp.*, 9th Dist. No. 25549, 2011-Ohio- 6789. There was evidence in that case that a great deal of pressure was applied to get prospective students to sign a contract by the end of a meeting with school personnel or risk losing a seat in the program. *Id*. at ¶ 14. No similar evidence was put forth by McCaskey. McCaskey had two months before classes began during which he could have taken the time to read and understand the terms in the Enrollment Agreement. His affidavit is devoid of any evidence that he was told he could be denied admission to the program if he wanted to take time to read the contract or have it reviewed by counsel.

b. Substantive Unconscionability

{¶30} "An assessment of whether a contract is substantively unconscionable involves consideration of the terms of the agreement and whether they are commercially reasonable." *Hayes* at ¶ 33, citing *John R. Davis Trust 8/12/05 v. Beggs*, 10th Dist. No.

08AP-432, 2008-Ohio-6311, ¶ 13; *Dorsey v. Contemporary Obstetrics & Gynecology, Inc.*, 113 Ohio App.3d 75, 80, 680 N.E.2d 240 (2d Dist.1996). Further, factors to consider include, but are not limited to:

> [T]he fairness of the terms, the charge for the service rendered, the standard in the industry, and the ability to accurately predict the extent of future liability. No bright-line set of factors for determining substantive unconscionability * * *. The factors to be considered vary with the content of the agreement at issue. *Id.*

{¶31} McCaskey spends time arguing the unconscionability of a financing provision of the Enrollment Agreement, but the Ohio Supreme Court has held that a party opposing arbitration must show that the arbitration provision, not the contract as a whole, is substantively unconscionable.

> [W]hen a party challenges an arbitration provision as unconscionable pursuant to R.C. 2711.01(A), the party must show that the arbitration clause itself is unconscionable. If the court determines that the arbitration clause is enforceable, claims of unconscionability that relate to the contract generally, rather than the arbitration clause specifically, are properly left to the arbitrator in the first instance. *Taylor*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, at ¶ 42.

{¶32} McCaskey also argues that the arbitration clause is substantively unconscionable because it does not disclose the costs of arbitration, which, he asserts, are higher than judicial proceedings. However, this argument was considered in *Taylor* where that court cited approvingly the Supreme Court's holding that a failure to disclose the costs of arbitration did not make a provision per se unconscionable. *Id.* at ¶ 56-58, citing *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 90-91, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000). The *Taylor* court required specific and individualized evidence that arbitration costs were unduly burdensome to the party opposing it.

**{¶33}** Here, just as in *Taylor*, there is no evidence that McCaskey would be prevented from prosecuting his claim in arbitration even though he did submit various fee schedules for the American Arbitration Association ("AAA") and the National Arbitration Forum ("NAF"). This is in contrast to the nursing students in *Rude*, where the waiver of class actions came together with the arbitration provision to greatly increase the costs associated with obtaining relief. *Rude* at ¶ 25. There is no similar issue here, and appellant has not demonstrated, as the nursing students in *Rude* did, that the costs associated with arbitration prevented him from pursuing his case.

**{¶34}** Sanford-Brown argues that citation to the AAA and NAF rules within the arbitration clause reasonably apprised McCaskey of the costs of arbitration because these rules include fee schedules. The fact that a fee schedule is contained in some ancillary document referenced in the arbitration clause does not reasonably apprise a consumer of the costs of arbitration. However, that is not required to find the clause enforceable. Without some evidence that a party would be precluded from bringing a claim, the cost of arbitration, standing alone, is not a justifiable reason to find unconscionability.

**{¶35}** The fact that Sanford-Brown chose the applicable governing rules to be those that apply to commercial arbitration proceedings is troubling given that the dispute here does not involve a commercial dispute. Further, the arbitration clause limits the types of damages that may be awarded. It provides:

> The arbitrator shall have the authority to award monetary damages and may grant any non-monetary remedy or relief available by applicable law and rules of the arbitration forums governing the proceedings and within the scope of this Enrollment Agreement. * * * The arbitrator will have no authority to award consequential damages, indirect damages, treble damages or punitive damages, or any monetary damages not measured by

the prevailing party's economic damages. The arbitrator will have no authority to award attorney's fees except as expressly provided by the Enrollment Agreement or authorized by law or the rules of the arbitration forum.

**{¶36}** McCaskey, citing to cases dealing with the impermissible abrogation of statutory rights in employment cases, argues that the clause in this case is similarly unconscionable. However, he fails to point to a statutory right that is impermissibly limited by the damage limitation provision. In fact, the provision specifically authorizes the arbitrator to award damages authorized by statute or the applicable arbitration rules. In *Post v. Procare Automotive Serv. Solutions,* 8th Dist. No. 87646, 2007-Ohio-2106, ¶ 13-16, this court found an arbitration clause to be substantively unconscionable where it abrogated an aggrieved employee's right to recover punitive damages and attorney fees pursuant to R.C. 4112.99. The present case does not require the careful reconciliation of "the 'liberal federal policy favoring arbitration agreements,' with the important rights created and protected by federal civil rights legislation." *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 652-653 (6th Cir.2003). There is no similar limitation of an important statutory right in the present case.

## III. Conclusion

**{¶37}** McCaskey has failed to show that the arbitration clause was inapplicable or unenforceable. The dispute here involves the provision of career services by Sanford-Brown, a topic specifically named in the arbitration clause. Sanford-Brown had the ability to contract with McCaskey and the ability to enforce the arbitration provision. Sanford-Brown's employee could also avail herself of the provision because disputes with employees of Sanford-Brown acting in their employment capacity are included in the provision as well as through agency principles. McCaskey also has failed to establish that the arbitration provision is substantively or procedurally unconscionable. Therefore, the trial court did not err in staying the case pending arbitration.

**{¶38}** Judgment affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


FRANK D. CELEBREZZE, JR., JUDGE

MARY J. BOYLE, P.J., and
LARRY A. JONES, SR., J., CONCUR