[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Ohio Council 8, AFSCME, AFL-CIO v. Lakewood*, Slip Opinion No. 2025-Ohio-2052.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2025-OHIO-2052

OHIO COUNCIL 8, AFSCME, AFL-CIO, ET AL., APPELLANTS, *v.* THE CITY OF LAKEWOOD, APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Ohio Council 8, AFSCME, AFL-CIO v. Lakewood*, Slip Opinion No. 2025-Ohio-2052.]

*R.C. 4117.11—The test for jurisdiction of State Employment Relations Board ("SERB") is whether one party filed charges with SERB alleging an unfair labor practice under R.C. 4117.11 or whether one party filed before a common pleas court a complaint alleging conduct that constitutes an unfair labor practice specifically enumerated in R.C. 4117.11—When a party does not allege an unfair labor practice or conduct that constitutes an unfair labor practice but instead raises a claim that is independent of the rights created by R.C. Ch. 4117, jurisdiction is not exclusive to SERB and may be exercised by a common pleas court—Because appellants did not allege that appellee engaged in an unfair labor practice or conduct that constitutes an unfair labor practice, SERB does not have exclusive jurisdiction over this*

*case and jurisdiction was properly exercised by common pleas court—Court of appeals' judgment reversed and cause remanded to court of appeals.*

(No. 2024-0031—Submitted February 12, 2025—Decided June 12, 2025.)

APPEAL from the Court of Appeals for Cuyahoga County,

No. 112456, 2023-Ohio-4212.

_____

FISCHER, J., authored the opinion of the court, which KENNEDY, C.J., and DEWINE, BRUNNER, DETERS, HAWKINS, and SHANAHAN, JJ., joined.

**FISCHER, J.**

**{¶ 1}** The test for the jurisdiction of the State Employment Relations Board ("SERB") has always been, and remains today, whether one of the parties filed charges with SERB alleging an unfair labor practice under R.C. 4117.11 or whether one of the parties filed a complaint before a common pleas court alleging conduct that constitutes an unfair labor practice specifically enumerated in R.C. 4117.11. *See State ex rel. Dept. of Mental Health v. Nadel*, 2003-Ohio-1632, ¶ 23. When a party does not allege an unfair labor practice or conduct that constitutes an unfair labor practice but instead raises a claim that is independent of the rights created by R.C. Ch. 4117, jurisdiction is not exclusive to SERB and may be exercised by a common pleas court.

**{¶ 2}** In this case, appellants, Ohio Council 8, AFSCME, AFL-CIO and Local 1043, AFSCME, AFL-CIO (collectively, "the union"), do not allege that appellee, the City of Lakewood, engaged in an unfair labor practice or conduct that constitutes an unfair labor practice under R.C. 4117.11. Therefore, jurisdiction was properly exercised by the Cuyahoga County Court of Common Pleas over the union's application and motion to compel arbitration. Because the Eighth District Court of Appeals held otherwise, we reverse that court's judgment and remand the

case to that court for it to consider the assignment of error that was not reached below.

## I. Facts and Procedural Background

**{¶ 3}** Michael Satink worked for the city's Department of Public Works. The union is the exclusive representative for a bargaining unit of certain employees in the city's Department of Public Works, including Satink, for the purpose of establishing the terms and conditions of employment. As such, the union entered into a collective-bargaining agreement ("CBA") with the city on behalf of the represented employees. The CBA includes a grievance procedure, which states that it is the "exclusive method of reviewing and settling disputes" between the city and the union or employees and that in the event a grievance goes to arbitration, decisions of arbitrators are "conclusive and binding."

**{¶ 4}** On November 4, 2020, the city terminated Satink's employment, claiming that he had committed insubordinate, inappropriate, and intimidating acts in the workplace. The union filed a grievance challenging the termination. When the parties were unable to resolve their dispute, the union moved the dispute to arbitration, and a date was set for an arbitration hearing. However, before the hearing commenced, the parties agreed to a last-chance agreement ("LCA"), under which Satink's employment was reinstated. The LCA stated that if Satink were to violate any city work rule or policy "pertaining to professional, respectful, and workplace appropriate behavior," he would be "subject to immediate termination without recourse to the grievance or arbitration provisions of the [CBA]."

**{¶ 5}** On November 4, 2021, the city again terminated Satink's employment after he engaged in workplace misconduct. The union filed a grievance challenging Satink's second termination. However, the city informed the union that under the LCA, it had no obligation to respond to the grievance, hear or process the grievance, or submit to an arbitrator's jurisdiction regarding the grievance. Nevertheless, the

union notified the city of its intent to arbitrate the grievance and filed an application and motion to compel arbitration under R.C. 2711.03 in the common pleas court.

{¶ 6} The city filed a motion to dismiss for lack of subject-matter jurisdiction, arguing that the union's claims were dependent on the CBA and rights created by R.C. Ch. 4117 and that SERB has exclusive jurisdiction over such claims. The common pleas court denied the city's motion to dismiss and granted the union's application and motion to compel arbitration.

{¶ 7} The city appealed to the Eighth District, raising two assignments of error. In its first assignment of error, the city alleged that the common pleas court had erred by exercising jurisdiction over the matter. In its second assignment of error, the city alleged that the common pleas court had erred by granting the union's application and motion to compel arbitration.

{¶ 8} The Eighth District noted that SERB has exclusive jurisdiction (1) when a party files "'"charges with SERB alleging an unfair labor practice under R.C. 4117.11"' " and (2) when "'"a complaint brought before the common pleas court alleges conduct that constitutes an unfair labor practice specifically enumerated in R.C. 4117.11."'" 2023-Ohio-4212, ¶ 11 (8th Dist.), quoting *State ex rel. Cleveland v. Sutula*, 2010-Ohio-5039, ¶ 16, quoting *Nadel*, 2003-Ohio-1632, at ¶ 23. Relying on this court's prior decisions, the Eighth District noted that the "'"dispositive test remains whether the claims arise from *or depend on* collective-bargaining rights created by R.C. Chapter 4117."'" (Emphasis added.) *Id.* at ¶ 12, quoting *State ex rel. Cleveland v. Russo*, 2019-Ohio-1595, ¶ 14, quoting *State ex rel. Ohio Civ. Serv. Emps. Assn. v. State*, 2016-Ohio-478, ¶ 57.

{¶ 9} The Eighth District stated that while the union was not explicitly seeking relief under R.C. Ch. 4117, it was substantively alleging that the city had interfered with Satink's collective-bargaining rights by refusing to arbitrate the grievance under the CBA. *Id.* at ¶ 15. Therefore, according to the court of appeals, the union's claims were entirely dependent on and fell directly within the scope of

4

the collective-bargaining rights created by R.C. Ch. 4117 and were therefore under the exclusive jurisdiction of SERB. *Id.* at ¶ 15, 20. The Eighth District reversed the common pleas court's judgment on the first assignment of error and remanded the case to that court with instructions to grant the city's motion to dismiss. *Id.* at ¶ 18, 21. The court of appeals determined that its disposition of the first assignment of error rendered the second assignment of error moot. *Id.* at ¶ 19.

{¶ 10} One judge dissented from the Eighth District's judgment, stating that no charges had been filed with SERB alleging that the city had engaged in unfair labor practices and that the union had not alleged conduct by the city that constituted an unfair labor practice specifically enumerated in R.C. 4117.11. *Id.* at ¶ 24 (Forbes, J., dissenting). The dissenting judge noted that while R.C. 4117.11(A) declares it an unfair labor practice to "'[e]stablish a pattern or practice of repeated failures to timely process grievances and requests for arbitration of grievances,'" *id.* at ¶ 25 (Forbes, J., dissenting), quoting R.C. 4117.11(A)(6), the city's refusal to arbitrate the union's grievance did not constitute a pattern or practice of behavior but instead constituted a single instance, *see id.* at ¶ 25-26 (Forbes, J., dissenting).

{¶ 11} The dissenting judge also opined that the union had not asserted claims that "arise from or depend on" the collective-bargaining rights created by R.C. Ch. 4117. 2023-Ohio-4212 at ¶ 27 (8th Dist.) (Forbes, J., dissenting). She noted that R.C. 4117.09(B) says that "'a party to [a collective-bargaining] agreement may bring suit for violation of agreements . . . in the court of common pleas of any county wherein a party resides or transacts business.'" *Id.* at ¶ 29 (Forbes, J., dissenting), quoting R.C. 4117.09(B)(1). She further noted that the union had not alleged that the city had interfered with Satink's statutory collective-bargaining rights and refused to bargain collectively but that instead the union had asserted a violation of the CBA over the city's refusal to arbitrate the union's grievance under the CBA. *See id.* at ¶ 28 (Forbes, J., dissenting). The dissenting judge stated that she would therefore hold that SERB does not have exclusive

jurisdiction over the dispute between the city and the union and that the common pleas court correctly denied the city's motion to dismiss. *Id.* at ¶ 33 (Forbes, J., dissenting).

{¶ 12} The union appealed, and we accepted the following proposition of law for review:

> R.C. Chapter 4117 does not prevent parties to a collective bargaining agreement from seeking enforcement of an arbitration clause in that agreement pursuant to R.C. 2711.03 and the State Employment Relations Board does not have exclusive jurisdiction over the enforcement of an arbitration clause in a collective bargaining agreement.

*See* 2024-Ohio-984.

## II. Analysis

{¶ 13} "Exclusive jurisdiction to resolve unfair labor practice charges is vested in SERB in two general areas: (1) where one of the parties filed charges with SERB alleging an unfair labor practice under R.C. 4117.11 and (2) where a complaint brought before the common pleas court alleges conduct that constitutes an unfair labor practice specifically enumerated in R.C. 4117.11." *Nadel*, 2003-Ohio-1632, at ¶ 23. In its application and motion to compel arbitration, the union does not allege that the city engaged in an unfair labor practice or conduct that constitutes an unfair labor practice. Therefore, SERB does not have exclusive jurisdiction over this case.

### A. The right to arbitrate exists independently of R.C. Ch. 4117

{¶ 14} The city argues that the common pleas court lacked jurisdiction because the union's underlying claims seeking to compel arbitration arose from and depended on collective-bargaining rights created by R.C. Ch. 4117. *See Sutula*,

2010-Ohio-5039, at ¶ 20. Specifically, the city relies on R.C. 4117.09(B)(1), which provides that a collective-bargaining agreement's grievance procedure "may culminate with final and binding arbitration of unresolved grievances, and disputed interpretations of agreements," and on R.C. 4117.10(A), which says that "[i]f the agreement provides for a final and binding arbitration of grievances, [the parties] are subject solely to that grievance procedure." Therefore, the city contends that when parties agree to an arbitration provision, R.C. Ch. 4117 creates a right to resolve grievances solely through that procedure.

{¶ 15} But the union is correct in its assertion that the right to arbitrate is a contractual right derived from the CBA that exists independently of R.C. Ch. 4117. While R.C. 4117.09(B)(1) does require collective-bargaining agreements to contain a grievance procedure, and that grievance procedure may culminate in arbitration, it does not require collective-bargaining agreements to contain an arbitration provision, and regardless, the right to enter into an arbitration provision in a collective-bargaining agreement exists independently of R.C. Ch. 4117. If R.C. 4117.09(B)(1) did not exist, parties would still have the right to agree to include arbitration provisions in their collective-bargaining agreements.

{¶ 16} Furthermore, in its application and motion to compel arbitration, the union did not claim that the city had violated R.C. 4117.09(B)(1) or that the CBA does not contain the required grievance procedure. Rather, the union claimed that the city had violated the grievance procedure in the CBA. And while R.C. 4117.10(A) does say that parties are "subject solely to" the grievance procedure contained in a collective-bargaining agreement, based on the language of the arbitration provision in the CBA in this case, that would be true regardless. In other words, the union's claim that the city violated the CBA by refusing to arbitrate its grievance would exist even if R.C. Ch. 4117 said nothing about grievance procedures.

**{¶ 17}** Moreover, "[i]f a party asserts rights that are independent of R.C. Chapter 4117, the party's complaint may properly be heard in common pleas court." *Franklin Cty. Law Enforcement Assn. v. Fraternal Order of Police, Capital City Lodge No. 9*, 59 Ohio St.3d 167 (1991), paragraph two of the syllabus. For example, a party to a collective-bargaining agreement "may bring suits for violation of agreements . . . in the court of common pleas of any county wherein a party resides or transacts business," R.C. 4117.09(B)(1). In this case, the union claims that the city has violated the CBA. Therefore, the union may bring suit in a court of common pleas.

*B. R.C. 4117.09(B)(1) allows a party to bring a suit for a violation of a grievance procedure contained in a collective-bargaining agreement*

**{¶ 18}** The city argues that R.C. 4117.09(B)(1) must be read in conjunction with R.C. 4117.10(A). The city, quoting an appellate-court case in its merit brief, contends that when these two provisions are read together, it is clear that "'R.C. 4117.09(B)(1) should be construed to mean that suits for violation of [collective-bargaining] agreements may be brought when the agreement does not provide for binding arbitration[, but w]hen, as here, the agreement provides for final and binding arbitration the remedy is limited to the enforcement of the award,'" *Shearer v. Piqua*, 1991 Ohio App. LEXIS 5415, *3 (2d Dist. Nov. 8, 1991). The city also argues that under the union's expansive reading of R.C. 4117.09(B)(1), parties could bypass a grievance procedure and file a complaint in a court of common pleas so long as they allege a violation of a collective-bargaining agreement.

**{¶ 19}** But our decision in this case does *not* mean that a party may bring any claim for a violation of a collective-bargaining agreement in a court of common pleas. Rather, the language in R.C. 4117.09(B)(1) that says a suit alleging a collective-bargaining-agreement violation may be brought in a court of common pleas is part of the broader provision, R.C. 4117.09(B)(1), which says:

(B) The [collective-bargaining] agreement shall contain a provision that:

(1) Provides for a grievance procedure which may culminate with final and binding arbitration of unresolved grievances, and disputed interpretations of agreements, and which is valid and enforceable under its terms when entered into in accordance with this chapter. . . . A party to the agreement may bring suits for violation of agreements or the enforcement of an award by an arbitrator in the court of common pleas of any county wherein a party resides or transacts business.

Thus, under R.C. 4117.09(B)(1), if a collective-bargaining agreement contains an arbitration provision, that provision governs and arbitration is required.

{¶ 20} The city is correct that under R.C. 4117.10(A), "[i]f the [collective-bargaining] agreement provides for a final and binding arbitration of grievances, [the parties] are subject solely to that grievance procedure." But what if one of the parties refuses to follow the grievance procedure? R.C. 4117.09(B)(1) has the answer. The other party may bring a suit in a court of common pleas to force the noncompliant party to adhere to the collective-bargaining agreement's grievance procedure.

C. *The city's refusal to process and arbitrate the union's grievance is not an unfair labor practice in this case*

{¶ 21} The city also relies on *In re Tuscarawas Twp. Bd. of Trustees*, SERB No. 2009-001, 2009 Ohio SERB LEXIS 13 (Aug. 31, 2009), in asserting that the refusal to process and arbitrate a grievance may, under certain circumstances, be considered an unfair labor practice under R.C. 4117.11(A)(1) and (A)(6). But that case is distinguishable.

**{¶ 22}** In *Tuscarawas Twp.*, the General Truck Drivers and Helpers Union Local 113 ("Local 113") had a collective-bargaining agreement with the Tuscarawas Township Board of Trustees ("the township"). Local 113 then merged with the General Truck Drivers and Helpers Local Union No. 92 ("Local 92"). Local 92 sent a letter to the township, informing it of the merger and stating that Local 92 would be Local 113's successor to the collective-bargaining agreement.

**{¶ 23}** After the merger, the township ordered three bargaining-unit employees, along with their union representatives, to attend a "special meeting." At the meeting, the township terminated the employment of two of the three employees. Local 92 filed a grievance on behalf of each terminated employee, but the township refused to process those grievances, claiming it had no collective-bargaining agreement with Local 92. The township argued that when the terminations occurred and the grievances were filed, SERB had not yet granted Local 92's petition for amendment of certification to reflect the merger of Local 113 with Local 92 and to show Local 92 instead of Local 113 as the exclusive representative for the bargaining-unit employees that were subject to the agreement with the township. So according to the township, Local 92 was not a party to the original collective-bargaining agreement and thus did not have standing to arbitrate the grievances.

**{¶ 24}** SERB rejected the township's argument, finding that the township had an obligation to recognize Local 92 from the date of its merger with Local 113 and to process the grievances. *Tuscarawas Twp.*, 2009 Ohio SERB LEXIS 13, at *11-17. SERB held that the township's refusal to process and arbitrate the grievances constituted unfair labor practices in violation of R.C. 4117.11(A)(1) (prohibiting a public employer from interfering with the selection of a representative for the purposes of collective bargaining or the adjustment of grievances) and (A)(6) (prohibiting a public employer from establishing a pattern

or practice of repeated failures to timely process grievances and requests for arbitration of grievances). *Id.* at *20-21.

{¶ 25} As pointed out by the dissenting opinion below, a "pattern or practice" of failing to timely process grievances or arbitration requests is an unfair labor practice under R.C. 4117.11(A)(6) but a single instance of refusing to arbitrate a grievance is not. *See* 2023-Ohio-4212 at ¶ 25-26 (8th Dist.) (Forbes, J., dissenting). In *Tuscarawas Twp.*, Local 92 alleged that the township had committed an unfair labor practice by failing to process two separate grievances. *See Tuscarawas Twp.* at *20-21. However, in this case, the union alleged only one instance of the city refusing to proceed to arbitration on a grievance.

{¶ 26} Furthermore, R.C. 4117.11(A)(1) is not applicable to this case. In *Tuscarawas Twp.*, SERB found a violation of R.C. 4117.11(A)(1) because the township had acknowledged that Local 92 was the successor to Local 113's collective-bargaining agreement but then argued that it did not have to process the grievances filed by Local 92, because Local 92 was not a party to that agreement. *See Tuscarawas Twp.* at *11, 16-17, 20-21. The union does not allege similar facts in this case. Therefore, *Tuscarawas Twp.* does not support the city's argument.

D. *The union's claims do not arise from and are not dependent on collective-bargaining rights created by R.C. Ch. 4117*

{¶ 27} The city also relies on our decision in *Sutula*, in which we stated that "'[a]ny claim which is independent of R.C. Chapter 4117, such as a breach of contract or enforcement, still falls solely within the jurisdiction of SERB if the asserted claim arises from or is dependent on the collective bargaining rights created by R.C. Chapter 4117,'" *Sutula*, 2010-Ohio-5039, at ¶ 23, quoting *State ex rel. Fraternal Order of Police, Ohio Labor Council, Inc. v. Franklin Cty. Court of Common Pleas*, 1996-Ohio-424, ¶ 10. But, as detailed above, the union's claims here do *not* arise from and are not dependent on collective-bargaining rights created by R.C. Ch. 4117, because even if R.C. Ch. 4117 did not exist, the parties would

still have the right to include arbitration provisions in their collective-bargaining agreement and because the union does not claim that the CBA did not contain the required grievance procedure.

{¶ 28} Moreover, this case is distinguishable from *Sutula*. In *Sutula*, the City of Cleveland sought a writ of prohibition to prevent Cuyahoga County Court of Common Pleas Judge John D. Sutula from exercising jurisdiction over a civil case instituted by the Municipal Construction Equipment Operator's Labor Council ("labor council") against Cleveland. The labor council and Cleveland had engaged in negotiations to form an initial collective-bargaining agreement. But when those negotiations fell through, the labor council went on strike. During the strike, the labor council stated that it would accept Cleveland's last prestrike offer and would end the strike the next day. However, Cleveland notified the labor council that because the last prestrike offer had been rejected and the labor council had gone on strike, the offer no longer existed and could not be accepted. The day after the strike ended, the labor council filed a complaint in common pleas court alleging that Cleveland had a duty to perform in accord with its last prestrike offer, even though the labor council had previously rejected that offer.

{¶ 29} While the labor council claimed that its case was really a simple contract action, that argument was belied by the facts of the case because there was no valid collective-bargaining agreement in place. *See Sutula* at ¶ 22-23. Because there was no valid collective-bargaining agreement, the labor council's claim arose from and was dependent on collective-bargaining rights under R.C. Ch. 4117. *See id.* at ¶ 24. In contrast, in this case the CBA is valid and the union alleges a violation of the CBA by the city; it does not allege a refusal by the city to bargain collectively during negotiations to create the CBA.

{¶ 30} Finally, we must note that it is unclear to this court what it means for a claim to be both "'independent of R.C. Chapter 4117' " while also "'aris[ing] from or [being] dependent on the collective bargaining rights created by R.C.

Chapter 4117,'" *Sutula*, 2010-Ohio-5039, at ¶ 23, quoting *Fraternal Order of Police* at ¶ 10. The test for SERB's jurisdiction has always been, and remains today, whether one of the parties filed charges with SERB alleging an unfair labor practice under R.C. 4117.11 or whether one of the parties filed a complaint before a common pleas court alleging conduct that constitutes an unfair labor practice specifically enumerated in R.C. 4117.11. *See Nadel*, 2003-Ohio-1632, at ¶ 23.

### III. Conclusion

{¶ 31} In its application and motion to compel arbitration, the union does not allege that the city engaged in an unfair labor practice or conduct that constitutes an unfair labor practice. Therefore, SERB does not have exclusive jurisdiction over this case. Furthermore, R.C. 4117.09(B)(1) expressly states that a party to a collective-bargaining agreement "may bring suits for violation of agreements . . . in the court of common pleas." And that is what happened in this case. Accordingly, jurisdiction was properly exercised by the Cuyahoga County Court of Common Pleas. We therefore reverse the judgment of the Eighth District Court of Appeals and remand the case to that court for it to consider the city's assignment of error that was not reached below.

Judgment reversed

and cause remanded.

_____

Ohio Council 8, AFSCME, AFL-CIO, Kimm A. Massengill-Bernardin, and Michelle R. Evans, for appellants.

Zashin & Rich Co., L.P.A., David P. Frantz, and Stephen S. Zashin, for appellee.

Dave Yost, Attorney General, T. Elliot Gaiser, Solicitor General, and Michael J. Hendershot, Chief Deputy Solicitor General, urging reversal for amicus curiae Ohio Attorney General Dave Yost.

Livorno & Arnett Co., L.P.A., Henry A. Arnett, and Colleen M. Arnett, urging reversal for amicus curiae Ohio Association of Professional Fire Fighters.

Bricker Graydon, L.L.P., Anne Marie Sferra, and Jessica E. Bainbridge, urging affirmance for amicus curiae Ohio Management Lawyers Association.

_____