[Cite as *Ohio Council 8, AFSCME, AFL-CIO v. Lakewood*, 2025-Ohio-4369.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

OHIO COUNCIL 8, AFSCME,
AFL-CIO, ET AL.,                                 :

      Plaintiffs-Appellees,          :
                                  No. 112456

      v.                              :

CITY OF LAKEWOOD,                               :

      Defendant-Appellant.           :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** September 18, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-22-962000

---

### *Appearances:*

Ohio Council 8, AFSCME, AFL-CIO, Kimm A. Massengill-Bernardin, General Counsel, and Linda K. Fiely, Associate General Counsel, *for appellees.*

Zashin & Rich Co., L.P.A., David P. Frantz, Stephen S. Zashin, and Sarah J. Moore, *for appellant.*

MARY J. BOYLE, J.:

{¶ 1} This case is before this court on remand from the Ohio Supreme Court in *Ohio Council 8, AFSCME, AFL-CIO v. Lakewood*, 2025-Ohio-2052 ("*Lakewood II*"), for further review of our decision in *Ohio Council 8, AFSCME, AFL-CIO v.*

*Lakewood*, 2023-Ohio-4212 (8th Dist.) ("*Lakewood I*"). The Ohio Supreme Court has remanded the matter to this court for consideration of the second assignment of error raised by defendant-appellant, the City of Lakewood (the "City"). For the reasons set forth below, we affirm.

## I. *Lakewood I* and *Lakewood II*

{¶ 2} In *Lakewood I*, the City appealed the trial court's judgment denying its motion to dismiss and granting the motion to compel arbitration filed by plaintiffs-appellees, Ohio Council 8, American Federation of State, County, and Municipal Employees, AFLCIO and Local 1043, American Federation of State, County, and Municipal Employees, AFLCIO (collectively referred to as the "Union"), seeking to arbitrate a grievance regarding Michael Satink ("Satink"), a City employee who was also a Union member.

{¶ 3} On appeal, the City raised two assignments of error for review. In its first assignment of error, the City argued that the trial court lacked subject-matter jurisdiction under Civ.R. 12(B)(1). The majority opinion of this court agreed, finding that while the Union's application and motion to compel arbitration did not explicitly allege violations of R.C. Ch. 4117, substantively its claims alleged that the City had interfered with the employee's collective-bargaining rights by refusing to arbitrate the grievance under the collective bargaining agreement ("CBA"). *Lakewood I* at ¶ 15, 20. Therefore, we found that the Union's claims were entirely dependent on and fell directly within the scope of the collective-bargaining rights created by R.C. Ch. 4117 and, as a result, were under the exclusive jurisdiction of the

State Employment Relations Board ("SERB"). *Id.* at ¶ 15, 20. Finding that the Union's attempt to recast its common pleas court case as an arbitration action was unavailing, we reversed the trial court's judgment on the first assignment of error and remanded the case to the trial court with instructions to grant the City's motion to dismiss for lack of subject-matter jurisdiction. *Id.* at ¶ 17, 18, 21.

{¶ 4} Because of our disposition of the first assignment of error, we did not address the City's second assignment of error — the trial court erred by granting the Union's application and motion to compel arbitration because under the plain language of the Last Chance Agreement ("LCA"), the Union and the employee waived recourse to the grievance or arbitration provisions of the collective bargaining agreement ("CBA") — finding that it was moot. *Id.* at ¶ 19.

{¶ 5} In *Lakewood II*, the Ohio Supreme Court reversed our decision, holding that the trial court properly exercised its jurisdiction and SERB does not have exclusive jurisdiction over the underlying matter because the Union did not allege in its application and motion to compel arbitration that the City engaged in an unfair labor practice or conduct that constituted an unfair labor practice. *Id.* at ¶ 31. Additionally, the Ohio Supreme Court noted that R.C. 4117.09(B)(1) expressly provides that a party to a collective-bargaining agreement "'may bring suits for violation of agreements . . . in the court of common pleas[,]'" which is what happened in the case below. *Id.*, quoting R.C. 4117.09(B)(1). Therefore, the *Lakewood II* Court reversed our decision and remanded the case for us to consider the City's "assignment of error that was not reached below." *Id.* at ¶ 31.

## II. The Union's Application and Motion to Compel Arbitration

{¶ 6} Prior to addressing the City's second assignment of error, we set forth the underlying facts and procedural history of this case as previously stated in *Lakewood I*:

> Both the City . . . and the Union . . . were parties to a [CBA] from January 1, 2020, through December 31, 2022.[1] The Union is the exclusive representative of a group of employees in the City's Department of Public Works, which included [Satink]. The CBA contains a grievance and arbitration procedure, which defines "grievance" as a "dispute or difference between the City and the Union, or between the City and an employee, concerning the interpretation and/or application of and/or compliance with any provision of this Agreement, including disciplinary actions * * *." (CBA, Article 10, Section 10.02). The CBA further provides that the grievance procedure "shall be the exclusive method of reviewing and settling disputes between the City and the Union and/or between the City and employee(s)" and "[a]ll decisions of arbitrators and all pre-arbitration grievance settlements reached by the Union and the City shall be final, conclusive and binding on the City, the Union and employee(s)." (CBA, Article 10, Section 10.04).

> On November 4, 2020, the City terminated Satink for what it deemed to be insubordinate, disruptive, and intimidating actions in the workplace. On November 5, 2020, the Union submitted a grievance challenging Satink's termination. The grievance process, however, did not resolve the dispute, and the Union moved the grievance to arbitration, which was scheduled for a hearing on March 11, 2021. Prior to this hearing, and after much negotiation, the City and the Union entered into a [LCA] on March 8, 2021, where the parties agreed to dismiss the grievance arbitration hearing and agreed that Satink would return to work under certain terms and conditions, including that "[i]f, during the terms of this Agreement, Satink violates any City work rule or policy pertaining to professional, respectful, and workplace appropriate behavior when performing assigned work responsibilities, he shall be subject to immediate termination without recourse to the grievance or arbitration provisions of the [CBA]." (LCA, [P]aragraph 7.)

> On October 20, 2021, Satink engaged in conduct that resulted in disciplinary charges. The City terminated Satink on November 4, 2021,

for violating the terms of the LCA, following the conclusion of the predisciplinary hearing on the matter held earlier that day. On November 10, 2021, the Union submitted another grievance, this time regarding Satink's second termination. On November 17, 2021, the City rejected any obligation to process the grievance, advising that the grievance was not arbitrable under the LCA. On January 19, 2022, the Union notified the City of its intent to arbitrate Satink's 2021 termination grievance. The City replied to the Union the next day again rejecting the Union's intent to arbitrate and noting that the Union and Satink relinquished their rights to arbitrate in the LCA in exchange for Satink's return to work.

Then on April 13, 2022, the Union filed an application and motion to compel arbitration under R.C. 2711.03, seeking to obtain an order compelling the parties to arbitration, which was the remedy the parties had bargained for in their collective bargaining agreement. On July 21, 2022, the City filed its answer, in which it asserted that the Union's "claims are barred by this Court's lack of jurisdiction over union claims arising from or dependent upon bargaining rights created by and subject solely to remedies available under Ohio Revised Code Chapter 4117." Four days later, the City filed a motion to dismiss for lack of subject-matter jurisdiction under Civ.R. 12(B)(1) and a brief in opposition to the Union's application and motion.

On August 12, 2022, the Union filed a brief in opposition to the City's motion to dismiss and a reply brief in support of its application and motion. The City filed its reply brief on August 19, 2022. On August 31, 2022, the Union filed a motion to amend its application and motion to compel arbitration, which the trial court granted. The Union sought to add the LCA as an exhibit because the document was inadvertently not attached to the initial motion. On January 30, 2023, the trial court issued a judgment denying the City's motion to dismiss and granting the Union's motion to compel arbitration.

[1] The factual history was obtained from the pleadings filed in the trial court.

*Id.* at ¶ 2-6.

{¶ 7} With regard to the Union's motion and application to compel arbitration, the Union argued that the parties agreed to a grievance and arbitration procedure in the CBA, which covered just cause and discipline, thus rendering the

instant grievance arbitrable. The Union further argued that the LCA did not waive arbitrability on whether the City had just cause to discipline Satink in the first place, nor did it waive the arbitrator's authority to make that just cause determination. As a result, the Union sought an order compelling the City to proceed with arbitration on the grievance. In opposition, the City argued that under the terms of the LCA, specifically Paragraph 7, the Union expressly waived any right to arbitrate Satink's termination.

## A. Standard of Review

{¶ 8} When addressing a trial court's ruling on a motion to stay and compel arbitration, the appropriate standard of review depends on "the type of questions raised challenging the applicability of the arbitration provision." *McCaskey v. Sanford-Brown College*, 2012-Ohio-1543, ¶ 7 (8th Dist.). Generally, an abuse of discretion standard applies in limited circumstances, such as a determination that a party has waived its right to arbitrate a given dispute. *Id.*, citing *Milling Away, L.L.C. v. UGP Properties, L.L.C.*, 2011-Ohio-1103, ¶ 8 (8th Dist.). However, when the issue is whether a party has agreed to submit to arbitration or when the unconscionability of an arbitration clause is raised, we apply a de novo standard of review. *McCaskey* at ¶ 7-8, citing *Shumaker v. Saks, Inc.*, 2005-Ohio-4391 (8th Dist.), citing *Vanyo v. Clear Channel Worldwide*, 2004-Ohio-1793 (8th Dist.); *Taylor Bldg. Corp. of Am. v. Benfield*, 2008-Ohio-938. "Under a de novo standard of review, we give no deference to a trial court's decision." *Brownlee v. Cleveland Clinic Found.*, 2012-Ohio-2212, ¶ 9 (8th Dist.), citing *Akron v. Frazier*, 142 Ohio

App.3d 718, 721 (9th Dist. 2001).  In this case, we apply a de novo standard of review because the issue is whether a party has agreed to submit to arbitration.

## B.  The LCA and the CBA

{¶ 9}    Here, the relevant portions of the LCA provide:

7. *If, during the term of this Agreement, Satink violates any City work rule or policy pertaining to professional, respectful, and workplace appropriate behavior when performing assigned work responsibilities, he shall be subject to immediate termination without recourse to the grievance or arbitration provisions of the Collective Bargaining Agreement.*

. . .

10.  This Agreement is entered into on a non-precedent setting basis and does not alter the Parties respective contractual rights or obligations *except as expressly set forth herein.*

(Emphasis added.)  (LCA, Paragraph 7, 10.)

{¶ 10} The CBA defines a "grievance" as a dispute or difference concerning "the interpretation and/or application of and/or compliance with any provision of [the CBA], including disciplinary actions[.]"  (CBA, Article 10, Section 10.02.) Section 10.02 further provides that when a grievance arises, the City and the Union shall follow a four-step grievance procedure, which culminates with arbitration in Step IV.  In addition, "[a]ll decisions of arbitrators and all pre-arbitration grievance settlements reached by the Union and the City shall be final, conclusive and binding on the City, the Union and employee(s)." (CBA, Article 10, Section 10.04.)  Notably, under CBA, Article 5, Section 5.01, "the City has the right and responsibility to . . . suspend, discipline or discharge [an employee] for just cause[.]"

### C. Presumption of Arbitrability

{¶ 11} Our analysis is guided by the basic principles set forth by the United States Supreme Court in in *AT&T Technologies, Inc. v Communications Workers of Am.*, 475 U.S. 643 (1986), where the Court stated that when a "contract contains an arbitration clause, there is a presumption of arbitrability in the sense that '[an] order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" *Id.* at 650, quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-583 (1960). The Court went on to state that this presumption can be overcome only by an agreement between the parties that contains an "'express provision excluding a particular grievance from arbitration,'" or, in the absence of such a provision, "'forceful evidence of purpose to exclude [the grievance] from arbitration.'" *Id.*, quoting *Warrior & Gulf* at 584-585.

{¶ 12} In the matter before us, the City argues that the trial court erred when it granted the Union's motion to compel arbitration because the court ignored the controlling language of the LCA. The City contends that "[u]nder the clear and unambiguous language of the LCA, it is not required to arbitrate its decision to terminate Satink because the Union and Satink waived "recourse to the grievance or arbitration provisions of the [CBA]." (LCA, Paragraph 7.) The Union counters that "[u]nless the agreement provides that the Employer has full discretion to determine whether an infraction occurs, the charges of misconduct can be challenged through

the grievance process." (The Union's Appellate Brief, p. 14.) The Union further counters that the LCA did not waive arbitrability on whether the City had just cause to discipline Satink in the first place, nor did it waive the arbitrator's authority to make that just cause determination. According to the Union, the LCA only waived the type of discipline Satink would be subject to *if* he was determined to have violated the work behavior policy.

{¶ 13} When reading Paragraph 7 of the LCA in conjunction with the CBA, we cannot say "'with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" *AT&T* at 650, quoting *Warrior & Gulf* at 582-583. The language of the LCA is unclear as to who determines whether Satink violated the work behavior policy. What is clear is that the parties agreed to a grievance and arbitration procedure in their CBA that covers just cause and discipline, thereby rendering the instant grievance arbitrable. *See* CBA, Articles 5 and 10.

{¶ 14} Because the LCA in the matter before us is susceptible to more than one reasonable interpretation and the CBA contains a broad grievance and arbitration procedure, we must resolve the ambiguity in favor of arbitrability. *AT&T*, 475 U.S. at 650; *see also United Steelworkers of Am., AFL-CIO-CLC v. Lukens Steel Co., Div. of Lukens, Inc.*, 969 F.2d 1468, 1471 (3d Cir. 1992), citing *Warrior & Gulf*, 363 U.S. at 582-583, and *Morristown Daily Record, Inc. v Graphic Communications Union, Local 8N*, 832 F.2d 31, 34-35 (3d Cir. 1987).

**D. Overcoming the Presumption**

{¶ 15} Having determined that the presumption in favor of arbitrability applies, we must now consider whether that presumption has been overcome. We find *Lukens* instructive on this issue. In *Lukens*, the Third Circuit Court Appeals reviewed whether the parties' LCA barred arbitration of the employees' grievances. *Id.* at 1470. The *Lukens* Court concluded that it did not bar arbitration. *Id.* at 1478. The relevant portion of the LCA provided that if the employee were suspended for violating a condition of the [LCA],

> he will be afforded an opportunity to plead his case before the Disciplinary Committee. The disposition of the Disciplinary Committee shall be final. Neither [the employee] nor the Union shall have recourse through the arbitration/grievance procedure to protest the suspension or disposition invoked by the Disciplinary Committee.

*Id.* at 1473.

{¶ 16} The *Lukens* Court first held that because the parties' CBA contained a broad grievance and arbitration clause, there was a presumption of arbitrability. *Id.* at 1475. This presumption could only be overcome if there was an express exclusion from arbitration in the LCA or if there was "strong and forceful" evidence of an intention to exclude the matter from arbitration. *Id.* The Court declined to find that the LCA expressly excluded the dispute from arbitration because the LCA failed to specify who was to determine whether a violation has occurred. *Id.* at 1477. The Court further found that there was no "strong and forceful" evidence of an intention to exclude the grievances from arbitration because the employer could not

demonstrate a meeting of the minds by the employees and the employer on this issue. *Id.* at 1478.

{¶ 17} In reaching its decision, the *Lukens* Court noted that LCAs "between parties to a collective bargaining agreement containing a broad arbitration clause are arbitrable when the underlying disputes are arbitrable, except when the parties expressly exclude the settlement agreements from arbitration." *Id.*, 969 F.2d at 1475, citing *Niro v Fearn Internatl., Inc.*, 827 F.2d 173, 175 (7th Cir. 1987). However, when there is no express exclusion, "'only the most forceful evidence of purpose to exclude [a grievance] from arbitration can prevail.'" *AT&T*, 475 U.S.at 650, quoting *Warrior & Gulf*, 363 U.S. at 584-585. "The party contesting the presumption of arbitrability bears the burden of producing 'strong and forceful' evidence of an intention to exclude the matter from arbitration." *Lukens* at 1475, citing *Morristown Daily Record*, 832 F.2d at 35. Thus, in order to overcome the presumption of arbitrability, the City must demonstrate that (1) the LCA expressly excludes the grievance from arbitration, or (2) in the absence of such a provision, the existence of "strong and forceful" evidence of an intention to exclude it from arbitration. We find that the City has failed to satisfy either of these tests.

### 1. Express Exclusion

{¶ 18} The City contends that it is not required to arbitrate its decision to terminate Satink because under the LCA, the Union and Satink waived "recourse to the grievance or arbitration provisions of the [CBA]." (LCA, Paragraph 7.) As the Union observes, however, the LCA does not specifically state who is to decide the

threshold question of whether Satink in fact violated the work behavior policy. The Union contends that under the LCA, the parties still have to arbitrate whether Satink violated the City's rules and if the arbitrator finds that Satink did violate the City's rules, then the arbitrator does not have the authority to alter the City-imposed discipline of termination by virtue of the LCA. However, if the arbitrator finds that Satink did not violate the City's rules, then he would not be disciplined.

{¶ 19} To accept the City's interpretation, we would have to assume that no "recourse to the grievance or arbitration provisions of the [CBA]" encompassed the threshold issue of ascertaining whether Satink violated the City's work behavior policy in the first instance. As the *Lukens* Court stated, "Agreements that require us to assume that an issue has been excluded from arbitration cannot be said to expressly exclude that issue." *Id.* at 1476. And "'in uncertain situations, the presumption should favor arbitrability[.]'" *Id.* at 1477, quoting *Niro* at 175. "[W]hen a settlement agreement bars arbitration of the penalty for violating it, yet fails to specify who is to determine whether a violation has occurred, we decline to infer that the parties intended to exclude this threshold question from arbitration." *Id.* Thus, based on the foregoing, we decline to find that LCA expressly excludes the grievance from arbitration.

## 2. "Strong and Forceful" Evidence of an Intention to Exclude From Arbitration

{¶ 20} The City contends that the LCA expressly excludes arbitration and the Union's interpretation of the word "if" at the beginning of Paragraph 7 of the LCA

defies logic and is a vain attempt to unilaterally rewrite the LCA. The Union counters that the LCA only waives the appropriateness of the punishment *if* guilt or just cause for the discipline is found by the arbitrator. In the absence of the parties' LCA, the CBA provides that the arbitrator would first determine whether Satink violated the City's rules and then decide whether the penalty imposed was appropriate. In that situation, the arbitrator could find that Satink violated the City's policy, yet also decide that the penalty of termination was too severe under the circumstances. By vesting the City with complete authority to determine the appropriate penalty, the Union argues, the LCA forecloses the possibility that the arbitrator might order a lesser penalty for Satink's violation.

{¶ 21} The divergent interpretations of the LCA is an indication that the parties' minds never met on the issue. *Lukens*, 969 F.2d at 1478, citing *E.M. Diagnostic Systems, Inc. v. Local 169, Internatl. Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America*, 812 F.2d 91, 97 (3d Cir. 1987) (where the Third Circuit Court of Appeals found that evidence that one party viewed the CBA a certain way does not indicate a meeting of the minds). Having presented no "strong and forceful" evidence of an intention to exclude the grievance from arbitration, the City has failed to meet its burden of overcoming the presumption of arbitrability. Therefore, we find that the trial court properly granted the Union's application and motion to compel arbitration.

{¶ 22} The second assignment of error is overruled.

{¶ 23} Accordingly, judgment is affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
MARY J. BOYLE, JUDGE

LISA B. FORBES, P.J., and
EMANUELLA D. GROVES, J., CONCUR